**CHEROKEE AIR PRODUCTS, INC., f/k/a Tippmann Pneumatics, Inc., L.P., Appellant–Defendant,**

v.

**BURLINGTON INSURANCE COMPANY, Appellee–Plaintiff.**

No. 02A05–0712–CV–725.

Court of Appeals of Indiana.

June 5, 2008.

Michael H. Michmerhuizen, Barrett & McNagny LLP, Fort Wayne, IN, Attorneys for Appellant.

Mark D. Gerth, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Cherokee Air Products, Inc., f/k/a Tippmann Pneumatics, Inc., L.P. (Cherokee), appeals the trial court's order setting aside its previous entry of default against appellee-plaintiff Burlington Insurance Company (Burlington). Cherokee argues that the trial court erred by setting aside the entry of default against Burlington. Finding no error, we affirm.

### FACTS

Cherokee manufactured a paintball gun and hired Pursuit Marketing, Inc. (PMI), to distribute the gun. PMI eventually sold the gun to a retailer who, in turn, sold it to Ray Fox. Ray gave the paintball gun to his son, Curtis. On August 5, 2001, Curtis and his friends, Shea and Ben Zatkulak, were playing with the paintball gun. Un-

aware that a paintball remained in the gun barrel, Curtis pointed the gun at Shea and fired. The paintball discharged and hit Shea below his right eye. Eventually, Shea lost his eye.

Shea and his family filed a lawsuit against Cherokee and the paintball gun retailer; PMI was later joined as a party after the retailer filed a third-party claim against it. Shea eventually settled with all parties except for Cherokee. Burlington was PMI's insurer and incurred over $45,000 in fees and costs to settle Shea's claim.

On December 20, 2004, Burlington, as PMI's subrogee, filed a complaint against Cherokee to recover the costs it incurred in defending and settling Shea's lawsuit. Cherokee answered Burlington's complaint and then filed a third-party complaint against PMI. On March 30, 2006, PMI filed a motion for judgment on the pleadings, and on September 11, 2006, the trial court granted PMI's motion and entered final judgment in its favor. Cherokee appealed, and on June 21, 2007, a panel of this court affirmed in an unpublished memorandum decision. *Cherokee Air Prods., Inc. v. Pursuit Marketing, Inc.*, No. 02A03–0610–CV–494, 2007 WL 1775400 (June 21, 2007), trans. *denied.*

On September 19, 2006, Cherokee filed a motion for leave to file a counterclaim against Burlington, which the trial court eventually granted. The counterclaim sought to hold Burlington liable because "Burlington stands in the shoes of PMI" as its subrogee. Appellant's App. p. 73. The counterclaim set out the identical facts and claims that Cherokee had originally raised against PMI in the third-party complaint. No independent acts of wrongdoing on Burlington's part were alleged; recovery was sought solely on the basis that Burlington was liable for PMI's conduct.

Burlington failed to file an answer to the counterclaim. On June 18, 2007, Cherokee filed a motion for default judgment on the counterclaim. On June 20, 2007, Burlington filed a motion to dismiss the counterclaim, and on August 10, 2007, Burlington filed a supplemental brief in support of its motion to dismiss and in opposition to the motion for default judgment. For the first time, Burlington argued that the counterclaim is barred by res judicata. On August 15, 2007, the trial court held a hearing on the motions for default judgment and to dismiss the counterclaim. At the close of the hearing, the court granted the motion for default and denied the motion to dismiss. Inasmuch as the issue of damages remained to be tried, Burlington requested that the order be certified for interlocutory appeal; the trial court denied the request.

On September 25, 2007, the trial court held a hearing on the issue of damages. On October 29, 2007, the trial court entered an order providing, in pertinent part, as follows:

4. From the evidence presented at trial on September 25, 2007, the Court finds Cherokee incurred $1,143,617.01 in litigation expenses in defending the two ... personal injury lawsuits. Cherokee incurred $389,260.14 of these expenses in the first ... Zatkulak litigation, and $754,356.87 in the second ... Zatkulak litigation. [FN 5]

 FN 5. The Court makes this finding in the interest of judicial economy, should the Order now entered herein later be found to be error.

5. The Counterclaim Cherokee filed against Burlington advances no new or independent bases for liability against Burlington that were not made against Burlington's insured, [PMI] in Cherokee's original third-party complaint. . . .

\* \* \*

7. The court now concludes that (despite [the] Default Judgment in favor of Cherokee and against Burlington, and ... [the] Order denying Burlington's Motion to Set Aside Default Judgment) based upon ... [the] Judgment o[n] the Pleadings [issued in favor of PMI] and the Indiana Court of Appeals' Memorandum Decision ..., there is no theory of liability advanced by Cherokee against Burlington upon which Cherokee may recover.

8. In *Comer–Marquardt v. A–1 Glassworks, LLC,* 806 N.E.2d 883 (Ind.Ct. App.2004), ... the Court of Appeals found "eminently reasonable and logical," the logic of the Florida Court of Appeals in a default case, holding "if the liability of a (defaulting) defendant is completely dependent upon the liability of a non-defaulting defendant, a final judgment should not be entered against the defaulting defendant unless the co-defendant has been found liable." *Rothman v. Hebebrand,* 720 So.2d 595, 596 (Fla.Dist.Ct.App.1998), *cited in Comer–Marquardt,* 806 N.E.2d at 888.

9. Here, Burlington inexcusably failed to answer Cherokee's cross[-] claim. However, Ind. TR 60(B)(8) (as incorporated into T.R. 55(C)) permits the Court to set aside [a] default "for any [other] reason justifying relief."

10. As in *Comer–Marquardt,* here Burlington's liability to Cherokee is "completely dependent" and entirely relies upon the liability of Burlington's insured ... to Cherokee. No separate basis for liability is alleged or maintained. Judge Felts and the Court of Appeals have found that [PMI] has no liabil-

ity to Cherokee. Thus, to now grant judgment of $1,397,014.40 against Burlington and in favor of Cherokee would be a manifest injustice. (*See Comer–Marquardt,* 806 N.E.2d at 888).

11. Accordingly, the Court now grants Burlington's "Petition for Judicial Notice and for Entry of Judgment," and grants judgment in favor of Burlington, and against Cherokee on Cherokee's cross[-] claim against Burlington. As [the Court of Appeals] observed, to do otherwise would allow an "absurd and unjust result." See *Comer–Marquardt,* 806 N.E.2d at 888.

12. Further, to the extent procedure demands in order to effectuate this result, the Court sua *sponte* corrects its September 11, 2007 Order, to now grant Burlington's Motion to Set Aside Default Judgment.

Appellant's App. p. 29–31. Cherokee now appeals.

### DISCUSSION AND DECISION

 Cherokee appeals the trial court's order, focusing its arguments on the portion of the order setting aside the default entry against Burlington. Default judgments are not favored in Indiana. *Young v. Elkhart County Office of Family and Children,* 704 N.E.2d 1065, 1068 (Ind. Ct.App.1999). Indeed, there is a marked judicial preference for deciding disputes on their merits and giving parties their day in court. *Standard Lumber Co. of St. John, Inc. v. Josevski,* 706 N.E.2d 1092, 1095 (Ind.Ct.App.1999). Thus, any doubt as to the propriety of a default judgment is to be resolved in favor of the defaulted party. *Pitts v. Johnson County Dep't of Pub. Welfare,* 491 N.E.2d 1013, 1015 (Ind.Ct. App.1986). Furthermore, any considerations of judicial economy created by af-

firming a default judgment must yield to considerations of justice. *Walker v. Kelley*, 819 N.E.2d 832, 839 (Ind.Ct.App.2004). The grant or denial of a default judgment is within the trial court's discretion; thus, we will reverse only if the trial court's decision was clearly against the logic and effect of the facts and circumstances. *Young*, 704 N.E.2d at 1068.

Cherokee devotes much of its argument to Trial Rule 60(B), which provides that "[o]n motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default," for a number of specific reasons or "any [other] reason justifying relief...." Directing our attention to a number of opinions that have interpreted this rule, Cherokee insists that Burlington has failed to meet its burden of establishing that it is entitled to relief pursuant to the catch-all provision of Trial Rule 60(B)(8).

Our Supreme Court, however, has held that Trial Rule 60(B) provides relief only from final judgments or orders, notwithstanding the language in the rule explicitly applying to an entry of default. *Allstate Ins. Co. v. Fields*, 842 N.E.2d 804, 808 (Ind.2006). Furthermore, where, as here, a trial court enters a default on *liability* but not on *damages*, the order is not a final judgment such that Rule 60(B) applies. *Id.* at 806. Instead, under these circumstances, if the party who has been defaulted on liability seeks to have the trial court revisit its default order, the party should file a motion for reconsidera-

tion of what our Supreme Court has dubbed "an interlocutory ruling[.]" *Id.* at 809; *see also* Ind. Trial Rule 53.4 (concerning motions to reconsider).

▪▪▪ In this case, therefore, Cherokee's appeal should more properly be framed as whether the trial court erred by sua sponte reconsidering its entry of default against Burlington and entering final judgment in Burlington's favor.[1] A trial court has inherent power to reconsider, vacate, or modify any previous order so long as the case has not proceeded to final judgment. *Hubbard v. Hubbard*, 690 N.E.2d 1219, 1221 (Ind.Ct.App.1998). A trial court may reconsider prior rulings through the careful exercise of discretion, and we will review its decision for an abuse of that discretion. *Buford v. Flori Roberts, Inc.*, 663 N.E.2d 1159, 1160 (Ind.Ct. App.1996).

The trial court based its decision on the fact that Burlington stood squarely in the shoes of PMI, its subrogee. It had already been fully and finally determined that PMI was not liable to Cherokee, and Cherokee raised no new claims against Burlington; instead, Cherokee raised the identical claims that it had raised against PMI.

In reaching its conclusion, the trial court relied on this court's decision in *Comer–Marquardt v. A–1 Glassworks, LLC*, 806 N.E.2d 883 (Ind.Ct.App.2004). In that case, A–1 Glassworks (A–1) filed a complaint against a former employee, Beth Comer–Marquardt, alleging that she had converted funds from A–1 by writing com-

---

1. To the extent that Cherokee argues in its reply brief that Burlington invited the trial court's erroneous reliance on the tenets of Trial Rule 60(B) by stating in its various motions that it was seeking relief from a default judgment pursuant to Trial Rule 60(B), we note that in *Allstate,* our Supreme Court stated that "[e]ven though Allstate styled its mo-

tion as presenting a Rule 60(B) request for relief from default, it would have been proper for the trial court to treat it as a request for reconsideration." 842 N.E.2d at 809. We will follow our Supreme Court's example and decline to apply the doctrine of invited error under these circumstances.

pany checks to herself. A–1 also sued House of Rays, LLC (Rays), a tanning salon business owned and operated by Comer–Marquardt. Marquardt filed an answer denying the allegations made against her as an individual but the answer did not refer to Rays. A–1 subsequently moved for default judgment against Rays because of its failure to appear or answer the complaint. The trial court entered default judgment against Rays in the amount of $15,366, and three weeks later, counsel appeared for Rays and moved to set aside the default judgment. The trial court refused to set it aside and Rays appealed.

This court rejected the argument that the trial court should have set aside the default judgment based on Rays's mistake or excusable neglect. Although the court found that Rays came very close to making the necessary showing based on Marquardt's error in failing to explicitly respond to the complaint on Rays's behalf, it ultimately concluded that it could not say that the trial court abused its discretion by declining to set aside the default judgment on this basis. *Id.* at 886–87.

The *Comer–Marquardt* court went on, however, to find another basis on which to conclude that the trial court had abused its discretion. It turned to the doctrine of respondeat superior, pursuant to which

a master or principal is chargeable with, and liable for, any tortious act committed by his servant or agent while such servant or agent is acting in the course of his employment and in the line of his duty. Conversely, if the servant or agent is released of liability, no liability can be imputed to the principal. Thus, it is axiomatic "that a judgment in favor of an employee requires judgment in favor his employer when the employer's liability is predicated solely upon the acts of said employee." *Health and*

*Hospital Corp. of Marion County v. Gaither,* 272 Ind. 251, 260, 397 N.E.2d 589, 595 (1979).

*Id.* at 887 (some internal citations omitted). As applied to Rays,

it is clear from A–1's complaint that its claim against Rays, the principal/employer, is based solely upon the theory of respondeat superior and its liability for the alleged conduct of its agent/employee, Marquardt. No wrongdoing by Rays as a separate entity is alleged. Marquardt adequately and timely answered the complaint against her personally and is challenging A–1's allegations against her on the merits. Hence, in this case the possibility exists that Marquardt will be found to have committed no wrongdoing, but Rays will still be held liable for Marquardt's wrongdoing that was found not to have occurred. It should go without saying that this would be a completely illogical result and would run directly afoul of the axiom that a judgment in favor of an agent requires a judgment in favor of the principal if the claim against the principal rests solely on alleged conduct by the agent.

*Id.* at 887–88. Ultimately, the court found in Rays's favor and reversed the trial court:

As we have said in other cases, we generally prefer substance over form whenever possible. With respect to default judgments specifically, the general rule is that they are disfavored and trials on the merits are preferred. Allowing the default judgment against Rays to stand under the circumstances in this case would be to completely ignore substance and the merits of this action in favor of the barest procedural technicality. It would also allow a potentially absurd and unjust result of Marquardt being absolved of any wrongdoing but her

company, Rays, being held liable for that very same alleged wrongdoing.

*Id.* at 888 (internal citations omitted).

Here, as in *Comer–Marquardt,* Cherokee has not alleged any wrongdoing by Burlington as a separate entity. Instead, Burlington's alleged liability is based solely on the doctrine of subrogation and the actions of PMI. Cherokee attempts to distinguish *Comer–Marquardt* by emphasizing that the court in that case relied on the doctrine of respondeat superior, but we find that to be a distinction without a difference. In both cases, the potential liability of the defaulted party is based solely on the acts of the non-defaulted party.

Indeed, Burlington's argument here is even stronger than Rays's was, inasmuch as A–1's claim against Comer–Marquardt was still pending. Here, in contrast, it has already been fully and finally decided that PMI is *not* liable on the precise facts and claims that Cherokee is asserting against Burlington. Thus, to hold Burlington liable under these circumstances would be absurd, inequitable, and unjust. Although we do not celebrate Burlington's inexplicable failure to respond to Cherokee's counterclaim, given these facts and our general predilection to decide cases on their merits, we find that the trial court did not abuse its discretion by setting aside the entry of default against Burlington and entering final judgment in its favor.

The judgment of the trial court is affirmed.

NAJAM, J., and BROWN, J., concur.