Bonita G. HILLIARD, in her capacity as Trustee of the H. David and Bonita G. Hilliard Living Trust, Appellant–Plaintiff,

v.

Timothy E. JACOBS, Appellee–Defendant.

No. 28A01–0911–CV–546.

Court of Appeals of Indiana.

May 18, 2010.

See also, 916 N.E.2d 689.

Edward W. Harris, III, Mary T. Doherty, Indianapolis, IN, Attorneys for Appellant.

Peyton L. Berg, Bose McKinney & Evans LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

In the fourth appeal in this case, Bonita G. Hilliard, in her capacity as Trustee of the H. David and Bonita G. Hilliard Living Trust, appeals the trial court's dismissal of Timothy E. Jacobs' counterclaim, which was the last pending claim in litigation involving two insurance policies on the life of Hilliard's husband David worth a total of $2.5 million. Finding that the trial court did not abuse its discretion by denying her leave to file a third amended complaint, striking her reply counterclaim, and denying her motion to stay enforcement, we affirm.

### Facts and Procedural History

Our recitation of the underlying facts is substantially taken from the three prior Court of Appeals opinions spawned in this case. See *Hilliard v. Jacobs*, 916 N.E.2d 689 (Ind.Ct.App.2009), *trans. denied; Hilliard v. Jacobs*, 874 N.E.2d 1060 (Ind.Ct. App.2007), *reh'g denied, trans. denied, cert. denied,* —— U.S. ——, 129 S.Ct. 287, 172 L.Ed.2d 150 (2008); *Jacobs v. Hilliard*, 829 N.E.2d 629 (Ind.Ct.App.2005), *reh'g denied, trans. denied.*

Jacobs and David became business partners in 1997, with each holding a 50% ownership interest in Advance Marketing Technology, LLC ("AMT"). To address the possibility of the unexpected death of one of them, in 1999 they executed a cross-purchase agreement which required each partner to insure the other's life in the amount of $200,000. The insurance proceeds were to be used to fund the buy-out of the deceased member's shares. In 2001, they increased the amount to $2

million. Pursuant to the agreement, Jacobs obtained two life insurance policies in the amount of $2.5 million on the life of David. AMT paid the premiums on Jacobs' and David's policies until the business was sold in 2002.

In anticipation of the sale of AMT, Jacobs and David entered into a Redemption and Settlement Agreement ("RSA") with a mutual release provision stating that each of them released the other "from any and all claims, demands, rights of action or liabilities of whatsoever nature, whether known or unknown, which any party now has or may have against any other party . . . as of the date of this Agreement, excluding rights of the parties arising out of this Agreement." Appellant's App. p. 111. It also provided that "[a]ny party who breaches any provision of this Agreement shall pay all costs and expenses, including reasonable attorneys' fees, incurred by any other party as a result of the breach or as a result of having to enforce this Agreement." *Id.* at 112.

After AMT was sold and dissolved, David suggested that he and Jacobs swap the policies they held on each other's lives. Jacobs declined and continued to pay the premiums on the policies he held on David's life. David stopped paying the premiums on Jacobs' life.

In January 2003 David filed a complaint in Monroe Circuit Court in which he ultimately requested that the trial court order Jacobs to convey the policies to him or, alternatively, order Jacobs to terminate the policies. David also requested conversion damages. David amended the complaint on the same day he filed the original complaint. The case was later transferred to Greene Circuit Court. David then filed a second amended complaint. In September 2003 Jacobs requested leave to file an amended answer, which included a counterclaim for attorney's fees for breach of

the mutual release provision in the RSA. The trial court granted David's subsequent motion for partial summary judgment and ordered Jacobs to terminate the policies on David's life.

Jacobs filed an interlocutory appeal. The trial court granted Jacobs' motion for a stay pending appeal, but upon David's motion to reconsider, it vacated and instead ordered Jacobs to designate the trial court clerk as the beneficiary of the policies and transfer the physical policies to the clerk. While the interlocutory appeal was pending, David passed away from ventricular fibrillation in July 2004. Hilliard, as trustee for David, was substituted as plaintiff. In June 2005 this Court reversed and remanded, determining that neither the cross-purchase agreement nor equity required Jacobs to terminate the policies he held on David's life.

On remand, in April 2006, Hilliard filed a motion for leave to file a third amended complaint "in order to state express theories of recovery that relate to specific actions and communications by Jacobs and his attorney in 2002 relating to the Policies." *Id.* at 274. The proposed third amended complaint included claims for declaratory judgment, breach of contract, breach of fiduciary duties, constructive fraud, fraud in the inducement, estoppel, and quasi-contract, all of which called for Jacobs to terminate the policies. The trial court held a hearing on pending motions, which included Hilliard's motion for leave to file a third amended complaint and Jacobs' September 2003 motion for leave to file an amended answer to Hilliard's second amended complaint. In May 2006 the trial court denied Hilliard's motion and granted Jacobs' motion. Jacobs then filed

his amended answer, which added his counterclaim for attorney's fees.

Jacobs moved for summary judgment. Hilliard filed a counterclaim in reply, which pled the same claims set forth in her proposed third amended complaint, and Jacobs subsequently filed a motion to strike the counterclaim in reply. Hilliard then moved for summary judgment. The trial court granted Jacobs' motion to strike the reply counterclaim. In January 2007 the trial court granted Jacobs' motion for summary judgment and denied Hilliard's motion for summary judgment. The trial court stayed its summary judgment order on the condition that Hilliard post a $250,000 letter of credit as security pending Hilliard's appeal.

In the second appeal, both parties agreed that when the policies were issued, Jacobs had an insurable interest in David's life. Hilliard, however, argued that the insurable interest must continue throughout the term of a life insurance policy. In October 2007 this Court held that the insurable interest need only exist at the time the policy was issued and therefore affirmed summary judgment for Jacobs.

After the Indiana Supreme Court denied transfer, the trial court lifted the stay and ordered the clerk to return the policies to Jacobs. Hilliard then filed a motion to stay enforcement, requesting that the trial court order Jacobs to return the policies to the clerk, pending her petition for a writ of certiorari to the United States Supreme Court. The trial court denied Hilliard's motion to stay enforcement. Jacobs presented the policies to the insurance companies and received $2.5 million plus 3% interest, or $289,771.52.[1]

---

1. Jacobs filed a request for damages under Indiana Trial Rule 62(D), claiming that the delay in his receiving the full value of the policies resulted in "costs, interest, and damages for delay" from the date the trial court entered summary judgment in his favor until he finally received the proceeds of the policies. The trial court held a hearing, at which

In October 2008 Hilliard filed a new complaint against Jacobs in Greene Superior Court, which alleged five of the seven claims she had proposed in both her third amended complaint and her counterclaim in reply. The trial court entered an order of consolidation.

In November 2008 Hilliard filed a motion to reconsider the May 2006 ruling denying her motion for leave to file a third amended complaint and the October 2006 ruling striking her counterclaim in reply. The trial court denied the motion in March 2009. In October 2009 Jacobs moved to dismiss his counterclaim. The trial court dismissed the case the same day. Hilliard now appeals.

### Discussion and Decision

Hilliard contends that the trial court abused its discretion by denying her leave to file a third amended complaint, striking her reply counterclaim, and denying her motion to stay enforcement.

### I. Third Amended Complaint

■ Hilliard contends that the trial court abused its discretion by denying her leave to amend. Indiana Trial Rule 15(A) provides that "[a] party may amend his pleading once as a matter of course" if within a certain time frame. "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." Although amendments to pleadings are to be liberally allowed, the trial court retains broad discretion in granting or denying amendments to pleadings. *MAPCO Coal Inc. v.*

*Godwin,* 786 N.E.2d 769, 777 (Ind.Ct.App. 2003). We will reverse only upon a showing of an abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Fleming v. Int'l Pizza Supply Corp.,* 707 N.E.2d 1033, 1036 (Ind. Ct.App.1999), *trans. denied.* We consider whether a trial court's ruling on a motion to amend is an abuse of discretion by evaluating a number of factors, including "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment." *Palacios v. Kline,* 566 N.E.2d 573, 575 (Ind.Ct.App. 1991).

■ Although Hilliard addresses all of the factors above, we find two to be dispositive: undue delay and prejudice. Regarding undue delay, David filed his initial complaint in January 2003. Hilliard attempted to bring new claims in a third amended complaint in April 2006, over three years after David filed his original complaint. Hilliard asserts that she acted "promptly" in seeking leave to amend after summary judgment was reversed in favor of Jacobs. Appellant's Br. p. 27. However, since the new claims were available to David at the time he filed his original complaint, we find that the relevant point from which to assess the lapse of time is when David first filed the complaint in January 2003, not when summary judg-

---

Jacobs argued that he was entitled to an award of 8% interest pursuant to Indiana Code section 24-4.6-1-101 because the trial courts order granting him possession of the policies was effectively a money judgment. The trial court awarded Jacobs 8% interest, less the 3% interest he had already received from the insurance companies, payable from

the $250,000 letter of credit filed by Hilliard. Hilliard appealed.

In the third appeal, a divided Court reversed and remanded, holding that the trial court's order returning the policies to Jacobs was not a judgment for money under Section 24-4.6-1-101.

ment was reversed in favor of Jacobs in June 2005.

As apparent justification for the delay, Hilliard explains that David decided against asserting all potential theories of recovery in the original complaint because "he feared for his life as long as Jacobs held 2.5 Million Dollars of insurance on his life" and thus his objective was to obtain a "speedy resolution." *Id.* (quotation omitted). It was only after summary judgment was reversed, when "it was apparent that an all-out fight was necessary," *id.* at 28, that Hilliard attempted to file the new claims.

We acknowledge that David was certainly entitled to bring fewer than all of his claims in the original complaint. However, we fail to understand why David's fear for his life would lead him to do so. If he wanted to cover his bases and have a greater chance at getting a quick resolution, he should have laid out all his claims from the outset. Instead, Hilliard and Jacobs are now in their seventh year of litigation. Moreover, even if we were to accept Hilliard's explanation for the delay at face value, it still does not explain why Hilliard did not try to amend the complaint until nearly two years after David's death.

Jacobs cites to *General Motors Corporation v. Northrop Corporation,* 685 N.E.2d 127 (Ind.Ct.App.1997), *reh'g denied, trans. denied,* to support his contention that Hilliard's attempt to amend constitutes undue delay. In *General Motors,* this Court found undue delay where a motion for leave to amend was filed four years after the original complaint and almost two years after the last amended complaint, and where the party requesting leave did not assert that it had newly discovered evidence that justified the delay. *Id.* at 142. We agree with Jacobs that *General Motors* supports a finding of undue delay

here. We conclude that Hilliard's actions in waiting over three years to assert claims that could have been raised in the original complaint and raising them only after this Court had ruled on the trial court's summary judgment order constitutes undue delay. *See also Hendrickson v. Alcoa Fuels, Inc.,* 735 N.E.2d 804, 818 (Ind.Ct.App. 2000) (finding undue delay where motion for leave to amend was filed almost four years after original complaint and three months after opposing parties filed summary judgment motions).

Hilliard attempts to distinguish *General Motors* by underscoring that in that case, our recitation of the basis for the trial court's decision to deny leave to amend included the futility of the amendment. Appellant's Reply Br. p. 5 & n.4. However, our clear basis for affirming the denial in *General Motors* did not consider the futility factor and instead considered only undue delay.

As to prejudice, we have found at least one Indiana case that is analogous to the instant case. In *Crawford v. City of Muncie,* 655 N.E.2d 614 (Ind.Ct.App.1995), *reh'g denied, trans. denied,* Crawford alleged that a police officer, in his official capacity, used excessive force while arresting him. *Id.* at 617. When the officer moved to dismiss the claims against him, Crawford requested leave to amend in order to state claims against the officer in his individual capacity and under additional legal theories. *Id.* at 622. On appeal, this Court concluded that the trial court did not abuse its discretion by denying leave to amend:

[S]ix years passed since Crawford filed his original Complaint. Crawford delayed a considerable amount of time before seeking leave to amend his complaint in order to state a claim against Officer Hammond individually. Officer Hammond has spent the past six years

defending the action brought by Crawford against him in his official capacity. To now require Officer Hammond to defend a claim brought against him in his individual capacity and under additional legal theories would cause undue prejudice and would be manifestly unfair.

*Id.* at 623. Similar to Crawford, Hilliard sought leave to amend only after it was apparent that her initial claims would fail, and her proposed amendment attempted to add new legal theories that were available to her at the outset of the case. *Crawford* thus supports a finding of prejudice in this case.

However, because there is a dearth of Indiana cases with a similar fact situation involving Indiana Trial Rule 15(A), and because the Indiana Trial Rules are based on the federal rules, it is appropriate for us to turn to federal authority for guidance in this case. *See Crossroads Serv. Ctr., Inc. v. Coley,* 842 N.E.2d 822, 825 (Ind.Ct. App.2005), *reh'g denied, trans. denied.* When assessing prejudice:

> the facts of each case must be examined to determine if the threat of prejudice is sufficient to justify denying leave to amend. In order to reach a decision on this point, the court will consider the position of both parties and the effect the request will have on them. This entails an inquiry into the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted.

6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1487 (2d ed.1990) (footnotes omitted).

Here, Hilliard waited three years to assert claims that could have been raised in the original complaint, and she offered no convincing reason for foregoing the opportunity to fully present these claims in a more timely fashion. By the time she filed these claims, the trial court had already ruled on summary judgment, we reversed in favor of Jacobs, we denied rehearing, and our Supreme Court denied transfer. If allowed, Hilliard's tactic of asserting new theories of recovery only after the original claims have proven unsound would place an undue burden on Jacobs to defend such piecemeal litigation and would result in potentially endless "bites at the apple." We conclude that such undue burden constitutes prejudice. *See Cont'l Bank, N.A. v. Meyer,* 10 F.3d 1293, 1298 (7th Cir.1993) (no abuse of discretion by refusing amendment filed two years after original complaint, the facts of which could have been pled at any time after the initial complaint, and allowing amendment would prejudice opposing party by requiring additional discovery); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F.2d 618, 623 (11th Cir.1983) (no abuse of discretion by denying tarpaulin buyer's motion to amend its pleadings to add negligence counterclaim against fabric manufacturer where buyer waited until entry of adverse summary judgment on warranty and strict liability claims, two-year discovery period had closed, negligence theory had been repeatedly suggested by court, buyer offered no plausible explanation for delay, and court stated introduction of new theory would encumber court with piecemeal litigation); *Doe v. McMillan,* 566 F.2d 713, 720 (D.C.Cir.1977) ("[T]he appellants complaint had been before the district court, this court and the Supreme Court for over thirty-eight months before appellants filed the first of their motions for leave to file an amended complaint.... When a plaintiff seeks to file an amended complaint this tardily, it is within the

sound discretion of the district court, in consideration of the potential prejudice to the other party and the interest in eventual resolution of litigation, to deny leave to amend."); *Pine Mountain Oil and Gas, Inc. v. Equitable Prod. Co.*, 446 F.Supp.2d 643, 651 (W.D.Va.2006) (denying owner of certain oil and gas interests leave to amend where new causes of action were available from the outset of the case such that owner could have rendered a more efficient expenditure of judicial resources if it had asserted proposed amendments earlier in the case, and amendment would prejudice operator in that owner failed to apprise operator of its true position at outset of action).

Given Hilliard's undue delay and the prejudice that would result to Jacobs if the new claims were allowed, we conclude that the trial court did not abuse its discretion by denying Hilliard's leave to amend.

## II. Reply Counterclaim

■ Hilliard also contends that the trial court abused its discretion by striking her counterclaim in reply. Jacobs' counterclaim requested attorney's fees incurred as a result of David's alleged breach of the mutual release provision in the RSA.[2] Hilliard's counterclaim in reply requested declaratory judgment and alleged six other counts: breach of contract, breach of fiduciary duties, constructive fraud, fraud in the inducement, estoppel, and quasi-contract. These claims were the same claims made by Hilliard in the proposed third amended complaint that the trial court disallowed. In striking Hilliard's reply counterclaim, the trial court stated, "This Court previously denied the Plaintiffs [sic] request to amend and now the Plaintiff is attempting to replead the same matters by calling the pleading a 'counterclaim' instead of an 'amended complaint.'" Appellant's App. p. 35.

■ Our decision rests on whether Hilliard's reply counterclaim is permissive or compulsory. A trial court must permit compulsory counterclaims, while permissive counterclaims are discretionary. *See Bacompt Systems, Inc. v. Ashworth*, 752 N.E.2d 140, 143–44 (Ind.Ct.App.2001), *trans. denied.* A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Ind. Trial Rule 13(A). The phrase "transaction or occurrence" should be broadly defined so as to effectuate the rule's intended purpose of avoiding multiple lawsuits between the same parties arising from the same event or events. *Ratcliff v. Citizens Bank of W. Ind.*, 768 N.E.2d 964, 967 (Ind.Ct.App. 2002), *trans. denied.* Two causes of action arise from the same transaction or occurrence when there is a logical relationship between them, that is, when the counterclaim arises from the same aggregate set of operative facts as the opposing party's claim. *Id.*

Conversely, a permissive counterclaim is one "not arising out of the transaction or occurrence that is the subject-matter of the opposing party's claim." T.R. 13(B); *see Reddick v. Carfield*, 656 N.E.2d 518, 522–23 (Ind.Ct.App.1995) (concluding that Carfield's action based on whether he was entitled to his pro rata share of farm program payments for the 1986 and 1987 crop years pursuant to the parties 1986 and 1987 agreements was not a compulsory

---

2. Jacobs' counterclaim requested attorney's fees based on a breach of the RSA. Appellant's App. p. 332. Although the counterclaim does not specify which provision was breached, both parties agree that the counterclaim alludes to a breach of the mutual release provision. *See* Appellant's Br. p. 17; Appellee's Br. p. 29–30.

counterclaim to Reddick's earlier action based on whether the parties had a valid agreement for the 1988 crop year), *reh'g denied, trans. denied; Cmty. State Bank Royal Ctr. v. O'Neill,* 553 N.E.2d 174, 180 (Ind.Ct.App.1990) (concluding that the bank's counterclaim in reply, alleging legal malpractice in an unrelated case, was a permissive counterclaim to the attorney's counterclaim for litigation fees, director fees, general counsel fees, and failure to pay stock dividends).

■■■ "The reason for allowing compulsory counterclaims in reply is because, in fairness, parties should have an opportunity to assert their compulsory counterclaims or they will be barred from pursuing them later by res judicata." *Cmty. State Bank,* 553 N.E.2d at 179. On the other hand, permissive reply counterclaims are more properly considered amendments to complaints. *See id.* at 180. Allowing unrestricted permissive reply counterclaims "would circumvent the rules limiting the amendment of claims and open the door to never ending rounds of pleadings, an unending bouncing ball." *Id.* at 179.

Hilliard contends that her reply counterclaim is compulsory because Jacobs' counterclaim and her reply counterclaim "both directly involve the RSA" and "both involve Jacobs' refusal to transfer David's Policies to David." Appellant's Br. p. 18. We disagree. Jacobs' counterclaim specifically requested attorney's fees incurred as a result of David's alleged breach of the mutual release provision in the RSA. The counterclaim itself did not involve the disposition of the policies, nor does the RSA itself mention the policies. Hilliard's reply counterclaim, on the other hand, alleged multiple counts regarding the disposition of the policies and none of the bases for those claims lie in the RSA. Rather than contest the validity of the mutual release provision or the RSA as a whole, Hilliard's

reply counterclaim repackages the very claims that she had ample time to assert yet failed to timely file, claims which we in the previous section determined were properly denied by the trial court. As such, we determine that Hilliard's counterclaim in reply is permissive in nature.

Hilliard nonetheless argues that the consolidation of her Greene Superior Court case, where she alleged five of the seven claims in her reply counterclaim, with the instant case establishes that her reply counterclaim is logically related and thus compulsory to Jacob's counterclaim. Again, we do not agree. The trial court's order of consolidation states,

> The claims presented by [Hilliard's] Complaint filed in the Greene Superior Court ... are substantially the same as those previously presented to this Court in [Hilliard's] proposed third amended complaint and [Hilliard's] proposed Counterclaim. [Hilliard] has effectively conceded the interchangeable nature of these claims by proposing to dismiss the complaint filed in the Superior Court if she is allowed to introduce the amended complaint or counterclaim in this action. [Hilliard] has also advised the Court that the events forming the basis of her claims "directly relate to [the policies on David's life], which have been the sole subject of this litigation since its inception." This Court is familiar with the dispute regarding the insurance policies.... This familiarity has been developed through six years of litigation involving these policies. Judicial economy would not be served by allowing [Hilliard] to bring the same issues into another court.

Appellant's App. p. 714–15 (citation omitted). The trial court's consolidation thus turned on the similarity between claims made by Hilliard and does not implicate Jacobs' counterclaim in any way. Regard-

ing Jacobs' statement noted in Hilliard's brief, "There is a common question as to whether the [RSA] bars all of Hilliard's claims," *id.* at 695; *see* Appellant's Br. p. 19, we likewise find no implicit concession that Hilliard's reply counterclaim arises from the same transaction or occurrence as Jacobs' counterclaim.[3]

 Because Hilliard's counterclaim in reply is permissive, we consider it as an amendment to David's original complaint and thus review the trial court's ruling on the motion to strike it for an abuse of discretion.[4] *See Cmty. State Bank,* 553 N.E.2d at 180. Because Hilliard's allegations in her reply counterclaim are the same as those in her proposed third amendment, and we have already found that the trial court did not abuse its discretion by refusing to allow the third amendment, we likewise conclude that the trial court did not abuse its discretion by striking the permissive reply counterclaim.[5]

### III. Stay of Enforcement

 Hilliard finally contends that the trial court abused its discretion by denying

her motion to stay enforcement pending her petition for a writ of certiorari. Indiana Trial Rule 62(B) provides in pertinent part, "In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of or any proceedings to enforce a judgment pending the filing and disposition of ... (5) an appeal." We review motions to stay enforcement under an abuse of discretion standard. *See In re Involuntary Termination of Parent–Child Relationship of A.K. & Kilbert,* 755 N.E.2d 1090, 1098 (Ind.Ct.App.2001) ("In reviewing a motion to stay proceedings, we apply an abuse of discretion standard of review.").

This Court's second opinion in this case affirmed summary judgment for Jacobs. We denied Hilliard's petition for rehearing. Hilliard then sought transfer to the Indiana Supreme Court, which was denied on April 29, 2008. On May 2, 2008, Jacobs filed a motion requesting the trial court to lift the stay of enforcement and to order the clerk to return the policies. The trial court granted the motion the same day. On May 5, 2008, Hilliard filed a motion to

3. Hilliard also focuses on a portion of the trial courts order that she construes as implying that "because [Hilliard] had notice of Jacobs' proposed counterclaim when she sought *discretionary* leave to amend the complaint, she should be denied the right to file a *mandatory* counterclaim later." Appellants Br. p. 24. As we have concluded that Hilliard's reply counterclaim was not compulsory but only permissive, her argument fails and we decline to address it further.

4. Hilliard questions the trial court's citation to *United Magazine Co. v. Murdoch Magazines Distributors, Inc.,* 2003 WL 223462 (S.D.N.Y. Feb.3, 2003), for the proposition that a counterclaim and an amended complaint are functionally equivalent. We decline to engage her on this issue as *Community State Bank,* an Indiana case, provides authority that a permissive reply counterclaim is more properly considered an amendment to the original

complaint. *See* 553 N.E.2d at 180. We thus agree with the trial court that Hilliard's permissive counterclaim in reply is the functional equivalent of an amended complaint.

5. Hilliard also argues that the trial court abused its discretion by denying her motion to reconsider the May 2006 ruling denying her motion for leave to file a third amended complaint and the October 2006 ruling striking her counterclaim in reply. A trial court may reconsider prior rulings through the careful exercise of discretion, and we will review its decision for an abuse of that discretion. *Cherokee Air Prods., Inc. v. Burlington Ins. Co.,* 887 N.E.2d 984, 988 (Ind.Ct.App.2008), *trans. denied.* We have concluded that the trial court did not abuse its discretion by denying Hilliard's motion for leave to amend or by striking Hilliard's reply counterclaim. The trial court thus did not abuse its discretion by denying her motion to reconsider.

stay enforcement, requesting that the trial court order Jacobs to return the policies to the clerk, pending her petition to the United States Supreme Court. Hilliard's motion was denied without a hearing.

We conclude that the trial court was well within its discretion in denying Hilliard's motion to stay enforcement. Hilliard requested the stay pending her petition to the United States Supreme Court; however, she made no claim that the litigation involved federal questions or conflicted with federal caselaw. Although this dispute is currently under our review, Hilliard fails to point out any portion of the record establishing that she informed the trial court, while it was ruling on her motion to stay, that she would be pursuing an appeal to this Court. Her Motion to Stay Enforcement Upon Appeal and Reply in Support of Motion to Stay Enforcement Upon Appeal only requested the stay pending her petition to the United States Supreme Court. The trial court did not abuse its discretion by denying her motion to stay enforcement.[6]

Affirmed.

NAJAM, J., and BROWN, J., concur.

---

6. To the extent Hilliard contends that the trial court erred by denying her request for a hearing on her motion to stay enforcement, we conclude that even assuming error, it was harmless as the United States Supreme Court denied certiorari.