## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 18 2015, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEES |
|---|---|
| Scott E. Yahne | Adam J. Sedia |
| Yahne Law, P.C. | Rubino Ruman Crosmer & Polen |
| Munster, Indiana | Dyer, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Fuel Fitness Winfield, Inc., and Jared Tomich, | February 18, 2015 |
| *Appellants-Defendants,* | Court of Appeals Cause No. 45A03-1406-CC-190 |
| v. | Appeal from the Lake Superior Court |
| Boro Baloski, Lubinka Baloski, Goran Baloski, Fitness 1, Inc., B&B Regional Development, LLC, | The Honorable Calvin D. Hawkins, Judge |
| *Appellees-Plaintiffs.* | Cause No. 45D02-1210-CC-741 |

**Barnes, Judge.**

# Case Summary

Fuel Fitness Winfield, Inc., ("Fuel Fitness") and Jared Tomich (collectively "the Appellants") appeal the denial of their motion to correct error and the denial of their motion to amend their answer following the trial court's grant of summary judgment in favor of Boro Baloski, Lubinka Baloski, Goran Baloski, Fitness 1, Inc., and B&B Regional Development, LLC., ("B&B") (collectively "the Appellees") in the amount of $484,345.00. We affirm.

# Issues

The Appellants raise seven issues, which we consolidate as:

I.   whether the trial court properly denied their motion to amend their answer; and

II.  whether the trial court properly denied their motion to correct error.

# Facts

Boro is the manager of B&B and the President and majority shareholder of Fitness 1. Goran is a member of B&B and the Vice-President and a shareholder of Fitness 1. Fitness 1 is a gym located in Crown Point. B&B owned the building where the gym is located and leased the building to Fitness 1. In November 2009, Fitness 1 and Fuel Fitness entered into multiple agreements for the lease and sale of Fitness 1, including a management agreement, signed by Tomich as the President of Fuel Fitness, and an asset purchase agreement, also signed by Tomich as the president of Fuel Fitness.

[4]     The management agreement called for Fuel Fitness to:

> retain all net profits in excess of the sum of Two Thousand Three
> Hundred Seventy-Five and 00/100ths Dollars ($2,375.00) per month
> (the "Business Fee") which are generated by the Business during the
> term of this Agreement; provided, however that [Fuel Fitness] shall be
> permitted to retain all net profits without payment of the Business Fee
> for the months of November and December, 2009 and the month of
> January, 2010. [Fuel Fitness] shall remit the monthly Business Fee to
> Fitness 1 on or before the first (1st) day of each calendar month
> commencing on February 1, 2010 and each calendar month thereafter
> while this Agreement remains in effect. Should [Fuel Fitness] fail to
> pay the Business Fee within ten (10) days of the date it is due, [Fuel
> Fitness] shall in addition to the Business Fee pay a late charge of Two
> Hundred and 00/100ths Dollars ($200.00).

Appellees' App. p. 39. Fuel Fitness also agreed to pay $8,500.00 per month in rent to B&B. According to Goran and Boro, Tomich personally guaranteed the "performance and payments" required by Fuel Fitness under the agreements. *Id.* at 6, 8. Fuel Fitness took possession of the premises on November 1, 2009. The Appellants stopped making payments pursuant to the terms of the agreements and, on September 3, 2010, Fuel Fitness was administratively dissolved.

[5]     On October 3, 2012, the Appellees filed a complaint against the Appellants jointly and severally alleging that they failed to make payments as required by the terms of the agreements beginning on February 1, 2010. The Appellees sought combined monthly payments of $10,875 for rent and the Business Fee, plus interest and attorney fees. Paragraph 7 of the complaint alleged:

> Defendant Jared Tomich agreed to personally guarantee the
> performance related to the terms of the Management Agreement as

> well as the Asset Purchase Agreement executed by his co-Defendant, the business entity Fuel Fitness Winfield, Inc.

*Id.* at 11. On November 5, 2012, the trial court granted the Appellees' motion for default judgment. On November 21, 2012, the Appellants filed a motion to set aside the default judgment, which the trial court granted.

On October 18, 2013, the Appellees filed a motion for summary judgment on the basis that the Appellants admitted to being in breach of the agreements. In support of their motion for the summary judgment, the Appellees designated, among other things, the management agreement, the asset purchase agreement, affidavits by Goran and Boro, and deposition testimony from Goran and Tomich.

On November 18, 2013, the Appellants responded to the motion for summary judgment by arguing that the amounts due were verbally revised, that the Appellants made some payments directly to the bank holding the mortgage on the property, and that there were genuine issues of material fact relating to payments made to the Appellees and the bank. On November 27, 2013, the Appellants filed their first answer to the complaint. In the answer, they admitted to the allegations in Paragraph 7 of the complaint.

On January 29, 2014, the trial court granted the Appellants' attorney's request to withdraw. The Appellees appeared for the February 20, 2014 summary judgment hearing, but the Appellants did not, and the hearing was held without them. At the hearing, the Appellees offered an exhibit showing a calculation of damages of $10,875.00 per month for unpaid rent and Business Fee from June

6, 2011 through January 2014, interest, attorney fees, and treble damages for bounced checks, totaling $484,345. On February 20, 2014, the trial court granted the motion for summary judgment and entered judgment in that amount for the Appellees and against the Appellants jointly and severally, including Tomich in his individual capacity.

[9] On March 24, 2014, the Appellants, represented by another attorney, filed a motion to correct error alleging that judgment against Tomich in his individual capacity was improper because the Appellees did not designate evidence of a written personal guarantee executed by Tomich, that the designated evidence did not establish the Appellants owed the Business Fee, and that only Fitness 1 and Fuel Fitness were in privity with each other precluding liability in favor of or against any other party. The Appellees responded by arguing that Tomich admitted to the personal guarantee in his answer and that these issues were waived because they were not raised in response to the motion for summary judgment.

[10] In response, the Appellants filed a motion for leave to amend their answer to show the denial of the allegations in Paragraph 7. The Appellees objected to this request and, following a hearing on the motion to correct error and the motion to amend, the trial court denied both requests. The Appellants now appeal.

## Analysis

### *I. Motion to Amend*

A party may amend his or her pleadings once as a matter of course within certain time frames. Ind. Trial Rule 15(A).[1] "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." Id. "Although amendments to pleadings are to be liberally allowed, the trial court retains broad discretion in granting or denying amendments to pleadings." *Hilliard v. Jacobs*, 927 N.E.2d 393, 398 (Ind. Ct. App. 2010), *trans. denied*. We will reverse only upon a showing of an abuse of that discretion, which occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.* In reviewing a trial court's ruling on a motion to amend, we evaluate a number of factors, including undue delay, bad faith, or dilatory motive on the part of the movant; repeated failure to cure deficiency by amendment previously allowed; undue prejudice to the opposing party by virtue of the amendment; and futility of the amendment. *Id.*

The Appellants attribute what they describe as a "mistake" in their answer to the failure to include the allegations from the complaint in the answer so the

---

[1] Portions of the Appellants' argument are based on Trial Rule 15(B), which permits amendment to conform to the evidence when issues not raised by the pleadings are tried by express or implied consent of the parties. Their reliance on Trial Rule 15(B) seems misplaced here, where no trial was held and the motion to amend was filed in conjunction with a motion to correct error following the grant of summary judgment. Moreover, the Appellants do not identify any properly designated evidence that would have supported amendment to conform with the evidence.

responses could be read in conjunction with the allegations. Appellants' Reply Br. p. 9. Even if such is standard procedure, Tomich admitted he did not have the opportunity to review the answer before it was filed. Thus, it can hardly be said that *he* was confused by the manner in which the answer was drafted, and we decline to speculate as to whether the Appellants' former attorney was confused by the manner in which the answer was drafted.

[13] The Appellants also contend that they were not acting in bad faith, that the time of the motion to amend is "largely inconsequential" because the Appellees' motion for summary judgment was filed before the Appellants' answer, and that the Appellees will not be prejudiced by the amendment because they took no action based on the answer. Appellants' Br. p. 28. Even if the Appellants were not acting in bad faith when they filed their motion to amend, we cannot overlook the fact that the Appellees filed their complaint in October 2012 and the Appellants did not file an answer until November 2013. In the meantime, default judgment against the Appellants had been granted and set aside and the Appellees had moved for summary judgment, which was later granted. Only after the Appellees relied on the answer in response to the Appellants' motion to correct error did the Appellants seek to amend the answer. Moreover, the amendment sought by the Appellants did not relate to issues raised in response to summary judgment; rather, it related to issues raised by the Appellants for the first time in their motion to correct error.

[14] In *Jacobs*, we concluded that, where summary judgment had been ruled on, reversed by a panel of this court, and the transfer of that decision denied,

waiting three years to assert claims that could have been raised in the original complaint constituted undue prejudice. *See Jacobs*, 927 N.E.2d at 400. We reasoned, "If allowed, Hilliard's tactic of asserting new theories of recovery only after the original claims have proven unsound would place an undue burden on Jacobs to defend such piecemeal litigation and would result in potentially endless 'bites at the apple.'" *Id.* As in *Jacobs*, the Appellees' ability to prosecute their case is severely hampered by the timing of the motion to amend, which occurred after judgment had already twice been granted in their favor. Under these circumstances, the Appellants have not shown that the trial court abused its discretion in denying their motion to amend.

## II. Motion to Correct Error

[15] The Appellants also argue that the trial court erroneously denied their motion to correct error. We review a trial court's ruling on a motion to correct error for an abuse of discretion, and the trial court's decision is afforded a strong presumption of correctness. *Santelli v. Rahmatullah*, 993 N.E.2d 167, 173 (Ind. 2013) (quotation omitted).

[16] In their motion to correct error and on appeal, the Appellants claim that the Appellees were not entitled to summary judgment against Tomich because they failed to prove Tomich executed a written personal guarantee,[2] that the

---

[2] Notably, the statute of frauds must be pled in a responsive pleading. *See* T.R. 8(C). The Appellants did not plead the statute of frauds as an affirmative defense in either the original answer or the proposed amended answer.

Appellees were not entitled to the monthly Business Fee pursuant to the terms of the management agreement because there was no evidence of profitability, and that the various parties did not have privity to pursue their claims against Tomich and/or Fuel Fitness. It is undisputed that these issues were not raised in any pleadings prior to the filing of the motion to correct error or in response to the Appellees' motion for summary judgment. "It is well established that a party may not raise issues for the first time in a motion to correct error." *Shepherd Properties Co. v. Int'l Union of Painters & Allied Trades, Dist. Council 91*, 972 N.E.2d 845, 849 n.3 (Ind. 2012) (agreeing that failure to raise issues in pleadings and motions, including its motion for summary judgment, that were filed before the trial court entered its judgment results in waiver); *Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000) ("A party may not raise an issue for the first time in a motion to correct error or on appeal.").

[17] In an attempt to avoid waiver, the Appellants rely on *Astral Electric Co. v. Bob Wells Construction Co.*, 538 N.E.2d 986, 988 (Ind. Ct. App. 1989), *trans. denied*, in which a panel of this court determined the trial court did not abuse its discretion by considering a motion to correct error that raised an issue of law not addressed in the movant's response to summary judgment. Given our supreme court's authority on this matter, we simply are not convinced that *Astral*, assuming it is still good law,[3] requires us to consider the arguments raised by the

---

[3] The *Astral* court relied on now repealed Indiana Code Section 33-1-6-3, which provided that a trial court retains jurisdiction over its judgment for ninety-days, and a previous version of Trial Rule 59. The Appellants offer no analysis showing that *Astral* is relevant despite these differences.

Appellants for the first time in their motion to correct error. Further, because the Appellants do not contend that the novation argument raised in response to the motion for summary judgment is a basis for granting the motion to correct error, they have not established that the trial court abused its discretion in denying their motion to correct error.[4]

## Conclusion

[18] The Appellants have not established that the trial court abused its discretion in denying their motion to amend their answer or in denying their motion to correct error. We affirm.

[19] Affirmed.

May, J., and Pyle, J., concur.

---

[4] The Appellants specifically assert, "no claim has been advanced in either this appeal or the underlying Motion to Correct Errors that in any way relates to an alleged novation." Appellants' Reply Br. p. 7.