## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 31 2018, 5:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brenda J. Marcus
Merrillville, Indiana

ATTORNEY FOR APPELLEE

Alexandra M. Curlin
Curlin & Clay Law
Association of Attorneys
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Victoria Robinson,

*Appellant-Defendant,*

v.

21st Century Charter School at Gary, Angela West, in her official and individual capacity, Dana (Johnson) Teasley, in her official and individual capacity, Board of Directors of 21st Century Charter Schools, and Greater Educational Opportunities Foundation,

*Appellees-Plaintiffs.*

December 31, 2018

Court of Appeals Case No.
45A04-1710-CT-2441

Appeal from the
Lake Superior Court

The Honorable
Bruce D. Parent, Judge

Trial Court Cause No.
45D04-1202-CT-65

**Kirsch, Judge.**

Victoria Robinson ("Robinson"), an office manager with 21st Century Charter School at Gary ("the School"), was fired from her position in March 2009, after the School found that public funds under Robinson's control were missing. In July 2010, the Indiana Attorney General filed suit against Robinson to recover the missing public funds. In August 2012, Robinson filed a separate, but related, ten-count amended complaint against the School; the School's Principal, Angela West ("West"); the School's Treasurer, Dana Johnson Teasley ("Johnson"); the School's Board of Directors ("the Board"); and Greater Educational Opportunities Foundation ("GEO Foundation") (collectively, "School Appellees"), alleging multiple claims, including breach of employment contract, indemnity, interference with employment contract, wrongful termination, defamation, defamation *per se*, breach of duty by the Board, negligence, and intentional infliction of emotional distress. In August 2014, Senior Judge Thomas Webber, Sr., summarizing the issues as being either employment-related issues or defamation-related issues, granted summary judgment in favor of School Appellees on the employment-related issues but denied summary judgment on the defamation-related issues ("2014 Order").[1] In September 2017, following discovery and in response to School Appellees' second motion for summary judgment, Judge Bruce Parent decided all pending

---

[1] The defamation-related issues included claims of libel, slander, defamation, defamation *per se*, breach of duty by the Board, negligence, and intentional infliction of emotional distress.

motions and granted summary judgment to School Appellees on the remaining defamation-related issues ("2017 Order").

On appeal, Robinson raises the following consolidated and restated issues:

> I. Whether the trial court abused its discretion when it denied Robinson's motion to strike School Appellees' second motion for summary judgment, thereby allowing the trial court to modify the non-final 2014 Order and grant summary judgment in favor of School Appellees on a previously denied motion for summary judgment on the defamation-related claims;
>
> II. Whether the trial court abused its discretion when it struck a police Offense Report, which School Appellees had attached as an exhibit to their 2017 motion for summary judgment;
>
> III. Whether the trial court abused its discretion when it struck two affidavits that supported Robinson's defamation-related claims;
>
> IV. Whether the trial court abused its discretion when it denied Robinson's motion for leave to file a second amended complaint; and
>
> V. Whether the trial court erred in granting summary judgment in favor of School Appellees on Robinson's ten-count complaint.

We affirm.[2]

---

[2] We thank Judge Parent for the thoroughness of his 2017 Order, which aided in our understanding and analysis of this case.

## Facts and Procedural History[3]

GEO Foundation runs the School. From late August 2007 through March 2009, the School employed Robinson. In connection with her employment, Robinson entered into a contract ("the Employment Contract") with the School. As Office Manager, Robinson's responsibilities included collecting money for extra-curricular activities ("ECA"), recording such amounts in a ledger, and depositing that money into the School's ECA bank account ("the ECA Account").

During Robinson's employ, School Principal West and Treasurer Johnson found that money was missing from the ECA Account. On February 23, 2009, West filed an "Offense Report" with the police, reporting that public funds under Robinson's control were missing. *Appellant's App. Vol. X* at 182. On March 23, 2009, the School terminated Robinson's employment, "either because funds received into the [ECA Account] had not been properly deposited or for the broader allegation of mismanagement of funds." *Appellant's App. Vol. III* at 2. Four days after the School terminated Robinson, she filed a

---

[3] The procedural history of this case was complicated, in part, by the fact that a series of judges presided over the proceedings, which School Appellees described as follows:

> A complicating factor in this matter is the progression of judges that have presided over this case. The State's action was presided over by Judge Pera. Robinson's action against [School Appellees] was originally presided over by Judge Svetanoff. Right around the time [School Appellees] filed their first motion for summary judgment, Judge Svetanoff fell ill, and Senior Judge Webber took on some of Judge Svetanoff's docket. At some point in time, after the very unfortunate death of the most Honorable Svetanoff, Judge Parent became the presiding judge in Superior 4. By the time Judge Parent became judge, Robinson had filed voluminous pleadings and had attached what she believed supported her claims.

*Appellees' Br.* at 5 n.2.

claim with the Gary Human Rights Commission. *Appellant's App. Vol. IV* at 87. In June 2009, the Indiana State Board of Accounts ("SBOA") performed an audit at the School and "concluded that money was missing . . . and that Robinson had been responsible for depositing the missing funds." *Appellant's App. Vol. III* at 2. The SBOA reported the missing funds to the Indiana Attorney General.

[6] In October 2009, a local newspaper article reported that the School "began to suspect in March that someone was stealing money," and that an Offense Report had been filed with the police, "but no further action had been taken." *Appellant's App. Vol. VI* at 165. The article also noted, "Auditors said they found Victoria Robinson, the [S]chool office manager, failed between August 2007 and March 2009 to deposit $11,841.12," and Ayanna Burns ("Burns") did not deposit $1,461.12 between August 2006 and August 2007.[4] *Id*. The article reported that Johnson stated that Burns should not have to repay the money because the School did not have formal cash handling policies until Burns left. *Appellant's App. Vol. VI* at 165. Robinson believed that she was defamed by the article and was again defamed at a School staff meeting, held at the start of the 2009-2010 school year, when West told the staff that she "saw [Robinson] in Walmart 'spending the [S]chool's money.'" *Appellant's App. Vol. IV* at 90.

---

[4] Ayanna Burns, who was the School's Office Manager from August 16, 2006 to August 22, 2007, was also accused of mismanaging public funds. *Appellant's App. Vol. IX* at 232.

[7] In July 2010, the Attorney General filed a collection action[5] ("AG Action") against Robinson and Burns[6] to recover missing public funds. The AG Action alleged that Robinson and Burns had a duty to account for and deposit all funds into the ECA Account, assure that the expenditure therefrom was authorized by law, and "commit no acts of misfeasance, malfeasance, or nonfeasance." *Appellant's App. Vol. IX* at 237. In March 2011, Robinson filed a counterclaim in the AG Action against School Appellees. However, because School Appellees were not parties to the AG Action, the trial court dismissed the counterclaim without prejudice in January 2012. *Appellant's App. Vol. II* at 32.[7] Rather than pursue her claims against School Appellees as part of the AG Action, on August 22, 2012, Robinson filed her first amended ten-count complaint[8] against School Appellees in the instant action and attached thereto, as Exhibit A, pertinent portions of the Employment Contract, which stated that Robinson's employment was *at will* and that the School could modify its policies at any time. *Appellant's App. Vol. IV* at 114-15.

[8] Robinson's allegations centered around her belief that School Appellees mismanaged the School, that she was wrongfully terminated, that the

---

[5] The AG Action was initially filed as a civil collection case, Cause No. 45D10-1008-CC-223. Thereafter, the designation of the case changed to civil plenary and the cause number changed to 45D10-1011-PL-111.

[6] Burns, however, is not a party to the instant action.

[7] Mediation among the parties in the AG Action resulted in Robinson settling the case with the Attorney General and agreeing to repay an undisclosed amount to the State.

[8] Robinson's filed her first complaint in February 2012. The trial court dismissed that complaint without prejudice, and with the trial court's permission, Robinson filed the first amended complaint in August 2012.

newspaper and West's comments constituted defamation, and that School Appellees had caused the State to file the AG Action against her in an effort to retaliate against her for telling them about financial mismanagement. Specifically, Robinson raised: Count I, Breach of Employment Contract; Count II, Indemnity; Count III, Interference with Employment Contract; Count IV, Wrongful Discharge; Count V, Retaliation; Count VI; Defamation; Count VII, Defamation *Per Se*; Count VIII, Breach of Duty by the Board; Count IX, Negligence; and Count X, Infliction of Emotional Distress. *Appellant's App. Vol. X* at 17-30. In October 2012, School Appellees filed their response and nothing more was filed until March 2013.

[9] A June 2013 telephonic status conference was held, during which School Appellees, who had already responded to the first amended complaint, were granted the right to file a motion for summary judgment, which they did on August 5, 2013. *Appellant's App. Vol. VII* at 179-92. Citing to the terms in the Employment Contract, School Appellees summarized their argument as follows:

> [Robinson]'s claims are nothing more than restatements of her previous claims which have now twice been dismissed. [Her] claims have no merit because (1) [Robinson] was an at will employee who could be terminated at any time with or without cause; (2) [School Appellees] owed [Robinson] no fiduciary duty; (3) [Robinson has] not plead[ed] any facts that would merit relief even if true; and (4) [Robinson] has settled her case with the State of Indiana and is now paying back funds to [the State], therefore[,] any claim [Robinson] may have had is now moot. For all these reasons, this *case should be dismissed with prejudice*.

*Appellant's App. Vol. VII* at 182 (emphasis added).

[10] On January 8, 2014, Robinson responded to School Appellees' motion for Summary Judgment regarding School Appellees' position that Robinson had failed to state a claim. *Appellant's App. Vol. IV* at 150-79. That same day, Robinson also responded to School Appellees' motion for summary judgment, attaching thereto designated evidence, including a copy of the Employment Contract and of the Employee Handbook. *Appellant's App. Vol. IV* at 181-221. The Employee Handbook included the following language, which was capitalized and underlined:

> *Our School is an at-will employer.* This means that regardless of any provision in this Employee Handbook, *either you or the School may terminate the employment relationship at any time for any reason* with or without cause or notice. *Nothing* in this Employee Handbook or in any document or statement written or oral, *shall limit the right to terminate employment-at-will.* No officer, employee, or representative of the School is authorized to enter into an agreement -- express or implied – with any employee for employment other than at-will.

*Appellant's App. Vol. VI* at 222 (emphasis added).

[11] After the parties filed additional pleadings, the trial court entered the 2014 Order on August 22, 2014. As to the defamation claim, Senior Judge Webber noted: (1) Johnson had not informed the newspaper that financial issues were the responsibility of the Treasurer; (2) Johnson "did not believe Robinson stole money"; and (3) sometime in 2009-2010, during a staff meeting, West said that

she saw Robinson in Walmart, "spending the school's money." *Appellant's App. Vol. III* at 19. Entering its order, the trial court reasoned:

> It appears from the superfluous voluminous pages of paper submitted by the parties that there are many issues for the court to consider. However, even with the pounds of paper the court had to read through, the issues remain, in this court's view, to wit:
>
> 1. Whether Robinson can maintain her defamation complaint against the [School Appellees]?
>
> 2. Whether [School Appellees], pursuant to the [E]mployment [C]ontract, can terminate Robinson's employment by reason of her status as an "at will" employee?

*Appellant's App. Vol. III* at 18-19.[9] Pertaining to the claim of "wrongful discharge and or [t]ermination of [Robinson's] employment," the trial court granted School Appellees' motion for summary judgment, finding that Robinson "was an employee 'at will' pursuant to her contract of employment," and that her termination was not a breach of contract." *Id*. at 20. The trial court denied summary judgment as to the defamation-related claims, finding issues of material fact. *Id*. In October 2014, the trial court denied Robinson's motion to reconsider or correct error.

---

[9] Senior Judge Webber's categorization of the claims created confusion for the parties about which issues survived for purposes of discovery. In December 2015, in response to the parties' motions for clarification, Judge Bruce Parent entered an order to provide guidance; however, that order appeared to resurrect some of the previously-decided employment-related issues. *Appellant's App. Vol. III* at 15-17.

[12]   Robinson took no further action until June 2015, when she requested a case management conference. At that point in the proceedings, the parties had not exchanged discovery. In September 2015, following a hearing, the trial court ordered that discovery would be cut off by December 31, 2015 with a dispositive motion deadline of January 29, 2016. *Appellant's App. Vol. III* at 37. Immediately, the parties began to argue about discovery. Robinson wanted to depose individuals from the State, with the goal of determining what prompted the financial audits. In other words, Robinson wanted to explore whether the School had retaliated against her, arguing that School Appellees had prompted the State to file the AG Action. School Appellees, however, argued that the trial court had disposed all employment-related issues, so only Robinson's defamation allegations had yet to be resolved. Accordingly, on November 30, 2015, School Appellees filed a motion to quash any discovery pertaining to Robinson's employment-related issues. *Appellees' Amended Vol. 2* at 5-6.[10] After a hearing on the matter, Judge Parent entered his December 21, 2015 order ("2015 Order"), stating his then-understanding regarding the issues that remained unresolved after the 2014 Order that could be the subject of discovery. Neither party sought interlocutory appeal.

[13]   On November 3, 2016, more than four years after Robinson filed her first amended complaint, Robinson sought leave to file a second amended complaint

_____

[10] This document is titled, Appellees' Amended App. and does not have a volume number. However, because there is an index volume, for ease of reference we will refer to it as *Appellees' App. Vol. 2*.

to both add new claims and to add Kevin Teasley ("Teasley") as a defendant. School Appellees objected, claiming that they would be unduly prejudiced. The trial court agreed and denied Robinson's motion. *Appellant's App. Vol. III* at 10.

[14]  In March 2017, the trial court ordered that any motions pertaining to outstanding discovery be filed by June 2017. Over Robinson's objection, School Appellees filed their second motion for summary judgment on May 30, 2017. Robinson responded by filing two motions on June 29, 2017—one to strike School Appellees' second motion for summary judgment and a separate motion to strike the four exhibits attached thereto. Robinson also filed a response to School Appellees' second motion for summary judgment, and School Appellees filed their reply.

[15]  On August 29, 2017, the trial court held a hearing on the second motion for summary judgment. Robinson's argument centered around her belief that School Appellees had prompted the AG Action and that, but for School Appellees' mismanagement of the School, the State would not have brought the AG Action. School Appellees argued that Robinson should have raised those allegations in the AG Action. Furthermore, School Appellees argued that no facts had been discovered that would substantiate Robinson's allegations, even when viewed in a light most favorable to her. Agreeing with School Appellees, the trial court entered the 2017 Order, granting them summary judgment on the remaining counts. Robinson now appeals.

# Discussion and Decision

[16]     The issues before us arise from: (1) the 2014 Order's grant of summary judgment in favor of School Appellees on Counts I through V, the employment-related issues; (2) the 2017 Order's grant of summary judgment in favor of School Appellees on Counts VI through X, the defamation-related issues; and (3) the trial court's ruling on certain pleadings. At the start of August 2017 hearing, the trial succinctly summarized the pleadings in this third category:

> I have us set today on **[School Appellees'] Motion for Summary Judgment**, which was filed May 30th of this year [2017]. I have a response from [Robinson]. I have a reply [from School Appellees].
>
> I also have us set for **[Robinson]'s Motion to Strike [School Appellees'] Motion for Summary Judgment** filed on June 29[, 2017] to which [School Appellees] ha[ve] filed a response in opposition. I have **[Robinson]'s Motion to Strike [School Appellees'] Exhibits** filed on June 29[, 2017]. I have **[School Appellees'] Motion to Strike [Robinson]'s Exhibits** filed on August 11[, 2017]. And finally, I have [School Appellees'] Motion for Sanctions filed on August 11[, 2017] and [Robinson]'s response filed on August 25th.[11]

*Tr.* at 4 (emphasis added).

---

[11] School Personnel filed a motion for sanctions on August 11, 2017, and Robinson filed a motion for sanctions on August 25, 2017. *Appellant's App. Vol. II* at 5. The trial court denied both motions for sanctions in its 2017 Order. The parties do not raise that issue on appeal.

[17] Here, the trial court issued findings of fact and conclusions on the 2014 Order and 2017 Order. Special findings are neither required nor binding on appeal of a summary judgment. *New Albany Historic Preserv. Comm'n v. Bradford Realty, Inc.*, 965 N.E.2d 79, 84 (Ind. Ct. App. 2012), *trans. denied*. However, the findings offer valuable insight into the trial court's rationale and help facilitate our review. *Id*.

## I. Robinson's Motion to Strike Summary Judgment Motion

[18] Robinson first contends that it was error for the trial court to grant summary judgment in favor of School Appellees on Robinson's defamation-related claims in the 2017 Order, when Senior Judge Webber had denied summary judgment on those same claims in the 2014 Order. Specifically, Robinson argues that the 2017 Order improperly reflected the consideration of evidence that had not been before the trial court when the 2014 Order was entered. Robinson made the same argument in her motion to strike School Appellees' second motion for summary judgment. As such, Robinson is claiming that Judge Parent erred when he denied her motion to strike School Appellees' second motion for summary judgment. Then, as now, Robinson argues that by ruling on School Appellees' second motion for summary judgment, the trial court "interfered with and vacated the clear ruling of the prior senior judge who determined that genuine issues of material fact precluded the granting of summary judgment to

[School Appellees] on [Robinson's] cause of actions for defamation and defamation *per se*."[12] *Appellant's Br.* at 18.

In support of her claim that a second motion for summary judgment was improper, and therefore the trial court erred in denying her motion to strike that motion, Robinson cites to Trial Rules 54(B) and 56(C) and our Supreme Court's holding in *Mitchell v. 10th & The Bypass, LLC*, 3 N.E.3d 967, 973 (Ind. 2014). In *Mitchell,* a commercial landlord, 10th and the Bypass ("LLC"), brought an environmental legal action against a dry-cleaning business and its owner, Mitchell, alleging that defendants had caused or contributed to the release of a hazardous substance into the subsurface soil or groundwater. 3 N.E.3d at 969. Mitchell, individually, moved for partial summary judgment and designated an affidavit swearing that he had not caused or contributed to the release of a hazardous substance. LLC did not respond to Mitchell's motion for summary judgment; instead, LLC filed its own motion for summary judgment. Finding no evidence that Mitchell caused the spill, the trial court *granted partial summary judgment* in Mitchell's favor. *Id.* at 969-70.

---

[12] In the 2017 Order, Judge Parent, noting his improper expansion of issues available for discovery, provided a "*mea culpa*" and set forth the issues that actually had survived summary judgment. *Appellees' App. Vol. 2* at 39-49. On appeal, Robinson argues that she was caused "caustic harm" when the litigation "ended with the trial court's words '*Mea Culpa*' in regard to the court's prior ruling. *Appellant's Br.* at 17. We disagree with Robinson's contention. In the 2017 Order, Judge Parent's *mea culpa* pertained to discovery issues only. Judge Parent was apologizing for nothing more than allowing Robinson to pursue discovery on already settled issues. The 2015 Order had no negative impact on the case and, in fact, that Order allowed Robinson to pursue discovery on issues that had already been settled by the 2014 Order.

[20] About one year later, but prior to the order being final, Mitchell's employee swore an affidavit stating that she had seen Mitchell spill a hazardous substance at his place of business. Relying on this "newly discovered inculpatory evidence establish[ing] Mitchell's individual liability," and recognizing that the order was not final, LLC filed a motion pursuant to Indiana Trial Rule 54(B) to vacate the trial court's order granting partial summary judgment in Mitchell's favor and attached the employee's affidavit thereto. *Id*. at 970. Mitchell did not refute the veracity of the allegations in the employee's affidavit; instead, he argued that the affidavit could not be considered because "pursuant to Trial Rule 56 newly discovered evidence must be properly designated and timely submitted—neither of which, according to Mitchell, was done in this case." *Id*.

[21] Our Supreme Court explained how Trial Rule 54 and Trial Rule 56 work together. Trial Rule 54 allows courts to modify any non-final order. *Id*. at 973. However, Trial Rule 56 and the case law interpreting it, strictly prohibit trial courts from considering any evidence submitted later than thirty days after the request for summary judgment has been submitted. *Id*. The question presented in *Mitchell* was: If the court has the power to modify a non-final summary judgment order but it cannot consider evidence submitted outside the thirty-day timeline to respond, how does it follow that the court has absolute authority to modify non-final orders? The Supreme Court answered that question by specifying that a non-final summary judgment order can be modified as long as the evidence considered in modifying it is the same evidence that was considered when the summary judgment order was made in the first place. *Id*.

[22] Here, we find *Mitchell* to be distinguishable from the present case and, therefore, disagree with Robinson's contention that School Appellees' second motion for summary judgment allowed the improper modification of a non-final order. Unlike *Mitchell*, Senior Judge Webber did not rely on any evidence outside the pleadings when he granted summary judgment in favor of School Appellees on the employment-related claims. School Appellees, initially, filed a motion to dismiss. In support of their motion to dismiss the employment-related claims, School Appellees relied on the *at-will* language in the Employment Contract, a copy of which Robinson had attached to her first amended complaint. In response, Robinson filed innumerable exhibits; however, because discovery had not commenced, none of those exhibits were the product of discovery. Here, the trial court could have granted School Appellees' motion to dismiss on the employment-related claims without relying on any evidence outside the complaint. *See* Ind. Trial Rule 12(B) (a motion to dismiss for failure to state a claim shall be treated as a motion for summary judgment when "matters outside the pleading are presented to and not excluded by the court"). Nevertheless, apparently recognizing the voluminous filings before the court, the trial court captioned the 2014 Order as a grant of summary judgment on the employment-related issues.

[23] Following the entry of the 2014 Order, discovery commenced, and School Appellees filed their second motion for summary judgment only after discovery had closed. At the hearing on the second motion for summary judgment, School Appellees made clear that the second motion for summary judgment

related only to the defamation-related issues.[13]  We agree with Judge Parent's conclusion that, "Robinson improperly viewed the present motion for summary judgment as a request for the [trial court] to reconsider a motion for summary judgment that had been granted in part and denied in part by Judge Webber in 2014."  *Appellant's App. Vol. III* at 7.  From 2014, when Senior Judge Webber entered his order, until discovery closed in September 2016, there was consistent discovery back and forth between the parties.  *Appellant's App. Vol. III* at 7.  Notably, Robinson herself supports her defamation-related claims using affidavits obtained after the 2014 Order.  We find no error in Judge Parent's decision to deny Robinson's motion to strike School Appellees' second motion for summary judgment.  Accordingly, considering the evidence found during discovery, the trial court did not err when it granted summary judgment in favor of School Appellees on the defamation-related claims.

## II. Robinson's Motion to Strike Exhibits

[24]  Attached to School Appellees' second motion for summary judgment were four exhibits:  (1) a February 2009 police "Offense Report" filed by West, setting forth that money was missing from the School's ECA Account; (2) West's

---

[13] During the hearing on the second motion for summary judgment, counsel for School Appellees made the following clarification:

> I'm not filing a Motion for Summary Judgment on the issues that have already been disposed of by this Court.  I'm filing a Motion for Summary Judgment on the issues that the Court said remained in its [2015 Order].  Those issues remained after discovery and this case is ripe for summary judgment at this point because summary judgment has been closed.  There are no pending summary judgment issues.  There are no pending summary judgment motions and so therefore this case, in our opinion and pursuant to our response, is ripe for summary judgment.

*Tr. Vol. II* at 6-7.

affidavit, stating that she did not say during a staff meeting that she saw Robinson spending the School's money in Walmart; and (3) portions of Robinson's February 2016 deposition, in which Robinson said she learned that a friend of a friend had heard West say in a staff meeting that Robinson was fired because she stole money. *Appellees' App. Vol. 2* at 34-36. The fourth exhibit consisted of portions of interrogatories, completed by Robinson's counsel, which pertained to defamation, libel, slander, and defamation *per se*. On June 29, 2017, Robinson filed a motion to strike those exhibits. The trial court granted Robinson's motion, in part, and struck the Offense Report, but denied her motion on the remaining three exhibits.

[25] On appeal, Robinson only challenges the trial court's *grant* of her motion to strike the Offense Report. Claiming that her motion was based on "the failure of defendant[s] to authenticate the document," she now contends that "[g]iven other evidence referencing the Offense Report the content or the substance of the report was capable of being presented in a form that would be admissible at trial." *Appellant's Br.* at 45. Robinson now urges the admission of this report, saying, it was "a 'key' document which, despite the finding of a lack of probable cause by the Gary Police Department, served as a critical basis for the AG's [A]ction against Robinson." *Id*. Assuming without deciding that the trial court abused its discretion when it granted Robinson's motion to strike the police report, we can provide no relief on Robinson's invited error. "'A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error.'" *Booher v. State*, 773

N.E.2d 814, 822 (Ind. 2002) (citing *Ellis v. State*, 707 N.E.2d 797, 803 (Ind. 1999) (quoting *Kingery v. State*, 659 N.E.2d 490, 494 (Ind. 1995), *trans. denied*), *trans. denied*).  Robinson cannot now complain that the trial court abused its discretion by granting *her motion* to strike the Offense Report.

## III. School Appellees' Motion to Strike Affidavits

Robinson next contends that the trial court abused its discretion when it granted School Appellees' motion to strike Robinson's affidavits in support of her defamation-related claims.  "A trial court has broad discretion in granting or denying a motion to strike."  *Auto-Owners Ins. Co. v. Bill Gaddis Chrysler Dodge, Inc.*, 973 N.E.2d 1179, 1182 (Ind. Ct. App. 2012), *trans. denied*.  "The trial court's decision will not be reversed unless prejudicial error is clearly shown."  *Id.*

Robinson argues that the trial court should not have stricken the affidavits of Lawrence Keilman and Leslie Christian; two affidavits that Robinson designated to oppose West's affidavit, where West denied saying that Robinson was spending the School's money.  During the 2017 hearing on School Appellees' second motion for summary judgment, School Appellees asserted that the affidavits should be stricken because School Appellees had asked "question by question about each of her claims . . . what were the witnesses, what were the claims, what were the statements, whether they were made, who made them, how often were they made; all of those things."  *Tr.* at 46; *Appellant's App*. *Vol. XI* at 124.  School Appellees asserted that they "ended up

having to file a motion to compel on that and we got that information. And still it wasn't the whole story." *Id*.

[28] Following the hearing, the trial court found:

> Counsel for Robinson conceded that the identification of the witnesses Lawrence Keilman and Leslie Christian and the substance of their respective affidavits was known to her and purposefully not provided to counsel for [School Appellees] during the period of discovery. [Robinson's counsel] indicated to the Court that she was hoping to keep these witnesses/employees of [the School] out of it for fear of reprisals.

*Appellee's App. Vol. 2* at 40-41. We note that, although Christian stopped working for the School in 2010, and Keilman stopped working for the School on July 31, 2011, discovery did not close until September 2016. *Appellant's App. at Vol. XI* at 83, 202. It is hard to imagine how Christian and Keilman could be subject to the School's reprisal more than five years after they were no longer in the School's employ. Based on this evidence, the trial court did not abuse its discretion when it struck the affidavits of Christian and Keilman.

## IV. Motion for Leave to file Second Amended Complaint

[29] Robinson contends that the trial court abused its discretion when it denied her motion for leave to file a second amended complaint. Indiana "Trial Rule 15(A) provides that a party 'may amend [her] pleading once as a matter of course' if within a certain time frame." *Rusnak v. Brent Wagner Architects*, 55 N.E.3d 834, 842 (Ind. Ct. App. 2016), *trans. denied*. "'Otherwise a party may amend [her] pleading only by leave of court or by written consent of the adverse

party; and leave shall be given when justice so requires.'" *Id*. (quoting Ind. Trial Rule 15(A)). "Amendments to pleadings are to be liberally allowed, but the trial court retains broad discretion to grant or deny motions to amend pleadings." *Id*. (citing *Hilliard v. Jacobs,* 927 N.E.2d 393, 398 (Ind. Ct. App. 2010), *trans. denied).* We will reverse only upon an abuse of that discretion, which occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court has misinterpreted the law. *Id.* "We judge an abuse of discretion by evaluating several factors, including 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment.'" *Id.* (quoting *Hilliard*, 927 N.E.2d at 398).

[30]     Here, Robinson filed a motion for leave to file a second amended complaint to add new claims and to add Teasley as a defendant in the action. Robinson filed her motion about thirty days after the close of discovery, but more than four years after she filed her first amended complaint. School Appellees responded that Teasley, who was the President and Chief Executive Officer of GEO Foundation and Superintendent of the School, was in the same position he had been in when Robinson filed her first amended complaint and that discovery had unearthed nothing to support such late amendment to the complaint. *Appellant's App. Vol. IX* at 185. The trial court denied Robinson's motion, agreeing with School Appellees' assessment that it "would be unduly prejudiced because the amendment would require additional discovery without providing

any new avenues of relief. Therefore, the monetary and time costs of the litigation would go up exponentially without providing any new liability, damages, or avenues for relief." *Appellant's Br. Vol. IX* at 177. In *General Motors Corp. v. Northrop Corp*., 685 N.E.2d 127, 142 (Ind. App. Ct. 1997), *trans. denied,* our court found no abuse of discretion in denying leave for plaintiff to file a second amended complaint four years after filing the original complaint and two years after filing first amended complaint, when: (1) there is no justification for delay in adding claims; (2) defendant would be prejudiced by the delay; and (3) amendment would be futile. The facts in the case before us are in line with those in that case. Accordingly, the trial court did not abuse its discretion when it denied Robinson's motion for leave to file the second amended complaint.

## V. Summary Judgment

Robinson contends that the trial court erred when it granted summary judgment in favor of School Appellees on her ten-count complaint. We review a grant of summary judgment de novo, applying the same standard as the trial court and drawing all reasonable inferences in favor of the nonmoving party. *Ali v. All. Home Health Care, LLC*, 53 N.E.3d 420, 427 (Ind. Ct. App. 2016) (citing *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014)). In conducting our review, we consider only those matters that were properly designated to the trial court. *Id.* (citing *Haegert v. McMullan*, 953 N.E.2d 1223, 1229 (Ind. Ct. App. 2011)). Summary judgment is appropriate if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.  T.R. 56(C).  A fact is "material" if its resolution would affect the outcome of the case, and an issue is "genuine" if a trier of fact is required to resolve the parties' differing accounts of the truth or if the undisputed material facts support conflicting reasonable inferences.  *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

[32] Under Indiana law, the moving party "must demonstrate that 'the designated evidence raises no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'"  *AM Gen. LLC v. Armour*, 46 N.E.3d 436, 439 (Ind. 2015) (quoting *Ind. Restorative Dentistry, P.C. v. Laven Ins. Agency, Inc.*, 27 N.E.3d 260, 264 (Ind. 2015)).  "Upon this showing, the nonmoving party then has the burden to demonstrate that there is a genuine issue of material fact."  *Id.*  All reasonable inferences will be construed in favor of the nonmoving party.  *Id.*  "And '[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that [appellant] was not improperly denied [her] day in court.'"  *Hughley*, 15 N.E.3d at 1003 (quoting *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted)).  We will affirm upon any theory or basis supported by the designated materials.  *FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012), *trans. denied*.

### A. Count I -- Breach of Contract

[33] Robinson asserts that School Appellees breached the Employment Contract by terminating her from their employ.  "Summary judgment is especially

appropriate in the context of contract interpretation because the construction of a written contract is a question of law." *TW Gen. Contracting Servs., Inc. v. First Farmers Bank & Trust*, 904 N.E.2d 1285, 1287-88 (Ind. Ct. App. 2009).

> When the language of a written contract is not ambiguous, its meaning is a question of law for which summary judgment is particularly appropriate. In interpreting an unambiguous contract, we give effect to the intentions of the parties as expressed in the four corners of the instrument. Clear, plain, unambiguous terms are conclusive of that intent. We will neither construe clear and unambiguous provisions nor add provisions not agreed upon by the parties.

*Kaghann's Korner, Inc. v. Brown & Sons Fuel Co.*, 706 N.E.2d 556, 565 (Ind. Ct. App. 1999) (citations omitted), *clarified on reh'g on other grounds*. A contract is not ambiguous merely because the parties disagree as to its proper construction; rather, a contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms. *Trs. of Ind. Univ. v. Cohen*, 910 N.E.2d 251, 257 (Ind. Ct. App. 2009). "We interpret a written contract by reading the contract as a whole, and we attempt to construe the language so as to not render any words, phrases, or terms ineffective or meaningless." *DLZ Ind., LLC v. Greene Cty.*, 902 N.E.2d 323, 327 (Ind. Ct. App. 2009).

[34] On appeal, Robinson contends that her breach of contract claim should have survived summary judgment. Robinson argues that an employee, like her,

"who [was] discharged for improper book[keep]ing[14] of the ECA" has a cause of action against School Appellees because, since the School had entered into a "Corrective Action Plan" with the SBOA to provide training on the ECA Account, the School breached its contract by: (1) not providing notice that Robinson was deficient in her job performance; and (2) not allowing her to participate in a "Progressive Improvement Plan." *Appellant's Br.* at 53. Robinson's claim for breach of contract rests on her assumption that School Appellees had a duty under the Employment Contract to provide Robinson with a "Progressive Improvement Plan," and that such language superseded the Employment Contract's terms that Robinson was an at-will employee. Reviewing the plain meaning of the Employment Contract, we disagree.

[35] "Indiana has historically recognized two basic forms of employment: (1) employment for a definite or ascertainable term, and (2) employment at will." *Vincennes Univ. ex rel. Bd. of Trs. of Vincennes v. Sparks*, 988 N.E.2d 1160, 1166-67 (Ind. Ct. App. 2013), *trans. denied*. If an employment contract makes no reference to a term of employment, there is a presumption that the employment is at will and can be terminated at any time, with or without cause, by either party. *Id*. Here, the Employment Contract said in at least three separate places that Robinson's employment was at will and that she did not have an

---

[14] Robinson's argument on this issue was confusing because she used the word "booking." *Appellant's Br.* at 53. Our review of underlying documents reveals that she intended to use the word "bookkeeping. *Appellant's App. Vol. VII* at 120 n.1.

expectation of continued employment. *Appellant's App. Vol. IV* at 114-15. Those provisions included:

> C.2.3. Employee acknowledges and understands that notwithstanding any other provision of this Agreement, *Employee's employment by Employer shall be "at will" and no guarantee of employment, either express or implied is provided by this agreement or any other verbal or written commitment.*

>> 1. *While legally the Employer may terminate Teacher's employment at any time, without notice, without cause, and without further recourse by Employee*, it is the Employer's *policy* that, in the event of failure of job performance, Employer will work with Employee to develop a Progressive Improvement Plan to help Employee, prior to any steps toward termination.

>> . . . .

> C.3. No other conditions of employment, express or implied, shall be construed as part of this Agreement. *Employee's signature represents his/her acknowledgment that this Agreement does not provide a right or guarantee to future employment.*

*Appellant's App. Vol. IV* at 114-15 (emphasis added).

[36] We agree with Robinson that the Employment Contract set forth the School's *policy* that, in the event of failure of job performance, the School would work with "Employee to develop a Progressive Improvement Plan." *Id.* at 114. That language, however, provided no additional job security for Robinson. The implementation of the Progressive Improvement Plan was just a policy and, as

the Employment Contract clearly stated, "Nothing herein shall be construed as limiting employer's ability *to amend or modify its policies, rules, and directives at any time. . . .*" *Id*. at 115. Robinson's employment under the Employment Contract was clearly at will. School Appellees did not breach the Employment Contract when they terminated Robinson, an at-will employee, from her position.

### B. Count II -- Indemnity

[37]    In her first amended complaint, Robinson alleged that School Appellees, "having breached the [E]mployment [C]ontract for the failure to disclose and [for] breach of the duty to give information, are responsible to indemnify [Robinson] for all sums required to pay the [S]tate for public funds alleged to have been owed and sought after on behalf of [School Appellees]." *Appellant's App. Vol. IV* at 94-95. Robinson's argument regarding indemnification rests on a successful claim for breach of contract. Because we find as a matter of law that School Appellees did not breach the Employment Contract and, therefore, acted properly in terminating Robinson's employment as an *at will employee*, the indemnity claim must also fail. On appeal, Robinson contends that she has a right to indemnity pursuant to her "employers Articles of Incorporation" and because her employers failed to give her notice of "the breach of this duty." *Appellant's Br*. at 44. Because these issues are being raised for the first time on appeal, they are waived. *See Messmer v. KDK Fin. Servs., Inc.*, 83 N.E.3d 774, 781 (Ind. Ct. App. 2017) (quoting *Dunaway v. Allstate Ins. Co*., 813 N.E.2d 376, 388 (Ind. Ct. App. 2004)) ("Issues not raised before the trial court on summary judgment cannot be argued for the first time on appeal[.]"). Even if Robinson

had previously raised these arguments, she has not designated the School's Articles of Incorporation or any other evidence to support her general assertion. The trial court did not err in granting summary judgment in favor or School Appellees on Robinson's indemnity claim.

### C. Count III -- Interference with Employment Contract

[38] Robinson argues that the trial court erred in granting School Appellees' motion for summary judgment on her claim of interference with employment contract. Robinson is correct that a claim of interference with an employment contract is not defeated because the employee is at will. *Appellant's Br*. at 43. "The parties in an employment-at-will relationship have no less of an interest in the integrity and security of their contract than do the parties in any other type of contractual relationship." *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 284 (Ind. 1991). The mere label "contract terminable at will" presupposes that the durational element of the contract has been left open. *Id*. at 285. This open-endedness, however, does not affect the legitimacy of the agreement itself or the amount of protection available to employees against interference by third parties. *Id*. at 285. "Thus any intentional, unjustified interference with such a contract by third parties is actionable." *Id*. at 284-85.

[39] Tortious interference with a contractual relationship consists of the following elements: "(1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the

breach." *Mourning v. Allison Transmission, Inc.*, 72 N.E.3d 482, 488 (Ind. Ct. App. 2017) (citing *Duty v. Boys & Girls Club of Porter Cty.*, 23 N.E.3d 768, 774 (Ind. Ct. App. 2014)).

> In order to adequately plead the fourth element—the absence of justification—the plaintiff must state more than a mere assertion that the defendant's conduct was unjustified. That is, the plaintiff must set forth factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified. In this context, "unjustified" means "malicious and exclusively directed to the injury and damage of another."

*Id.* (internal citations omitted). Robinson was terminated from her position when Principal West and Treasurer Johnson discovered that Robinson could not account for money missing from the ECA Account. Robinson was not charged with a crime, and she did not admit to wrongdoing; yet, money was missing from the ECA Account without explanation. As a matter of law, we cannot say that School Appellees' actions of terminating Robinson from her position as Office Manager, with oversight over the ECA Account, was malicious or intended to injure her. The trial court did not err when it granted summary judgment on Robinson's claim for interference with Employment Contract.[15]

---

[15] Robinson does not appeal the trial court's grant of summary judgment in favor of School Appellees on Count IV -- wrongful discharge. However, like Robinson's indemnity claim, the success of that claim rested on a finding that School Appellees acted improperly when they dismissed Robinson. Because Robinson was terminated as an at will employee, the trial court did not err in granting summary judgment in favor of School Appellees on Robinson's wrongful discharge claim.

### D. Count V -- Retaliation

[40] On appeal, Robinson contends that she was retaliated against by School Appellees. Where "retaliation is at issue, summary judgment is only appropriate when the evidence is such that no reasonable trier of fact could conclude that a discharge was caused by a prohibited retaliation." *Markley Enters. v. Grover*, 716 N.E.2d 559, 565 (Ind. Ct. App. 1999). "In general, an employment contract of indefinite duration is presumptively terminable at the will of either party." *Best Formed Plastics, LLC v. Shoun*, 51 N.E.3d 345, 351 (Ind. Ct. App. 2016) (quoting *Stillson v. St. Joseph Cty. Health Dep't*, 22 N.E.3d 671, 679 (Ind. Ct. App. 2014), *trans. denied*), *trans. denied*. However, it is well settled in Indiana that an action for retaliatory discharge exists when an employee is discharged for exercising a statutorily conferred right, such as filing a worker's compensation claim. *Purdy v. Wright Tree Serv., Inc.*, 835 N.E.2d 209, 212 (Ind. Ct. App. 2005), *trans. denied*. In *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 251-53, 297 N.E.2d 425, 427-28 (1973), our Supreme Court held that an employee-at-will who was discharged for filing a worker's compensation claim could file an action for retaliatory discharge against her employer because the Worker's Compensation Act was designed for the benefit of employees, and as such, its humane purpose would be undermined if employees were subject to reprisal without remedy solely for exercising that statutory right.

[41] In her complaint, Robinson claimed that School Appellees retaliated against her by interfering with her "non-waivable right to file a charge with the EEOC." *Appellant's App. Vol. IV* at 99. She also claimed that School Appellees' action of

causing the Attorney General to bring a collection action against her to recover public funds was done in retaliation for Robinson having reported financial irregularities to the officers of the School. *Id*. at 99-100. We find no evidence to support Robinson's claims of retaliation.

[42] The parties agree that Robinson filed a claim with the Gary Human Rights Commission; however, that was done four days *after* she was let go. *Appellant's App. Vol. IV* at 87. We find no evidence, though, regarding if or when Robinson filed a charge with the EEOC. Accordingly, this claim fails. Furthermore, we find no evidence that the AG Action was filed in retaliation for Robinson's actions. Mary Jo Small ("Small"), a member of the SBOA audit team, testified in a deposition that the account examiners and SBOA play no role in determining what action, if any, is pursued after an audit is certified and forwarded to the Attorney General and prosecutor's office. *Appellant's App. Vol. XI* at 125, 126. It is the prosecutor who determines whether there is a criminal action to pursue, and the Attorney General who determines whether to pursue a civil action for any misappropriation of assets. *Tr. Vol. II* at 15-16; *Appellant's App. Vol. XI* at 125-26. Because the AG Action could not have been ordered by School Appellees, that action did not constitute retaliatory action on the part of School Appellees. The trial court did not err in granting summary judgment on the claim of retaliation.

### *E. Counts VI and VII –Defamation and Defamation Per Se*

[43] Robinson also argues that the trial court erred when it granted summary judgment in favor of School Appellees on her defamation claims.[16] "Defamation is that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Ali*, 53 N.E.3d at 428 (internal quotation marks omitted). "To recover in an action for defamation, that which caused the alleged defamation must be both false and defamatory. *Id.* (internal quotations omitted). "Moreover, a plaintiff must establish the basic elements of defamation: (1) a communication with a defamatory imputation; (2) malice; (3) publication; and (4) damages." *Id.* The determination of whether a communication is defamatory is a question of law for the court. *Id.*

[44] In an action for defamation, the defamatory meaning of words can be apparent on the face of the words (*per se*) or apparent only by reference to extrinsic facts and circumstances (*per quod*). Other times, the terms *per se* and *per quod* are used

---

[16] Robinson uses the terms libel, slander, and defamation. As explained in the Indiana Model Civil Jury Instructions:

> Defamation is an attack upon the reputation or character of another that results in injury. A communication is defamatory if it tends to harm the reputation of another so as to lower him in the eyes of the community or to deter third persons from associating or dealing with him.

> The law of defamation historically has been divided into libel and slander, which are methods of defamation. Libel is a written defamation while slander is an oral or spoken defamation of character or reputation. Libel can be expressed either in writing or by print, signs, pictures, effigies, or the like. Historically, different legal standards have been applied to libel and slander in some circumstances. Unless those circumstances are present in a case, the committee recommends that the generic term "defamation" be used in jury instructions.

2700 Introduction, Ind. Model Civ. Jury Inst. 2700 INTRO (footnotes omitted).

in reference to whether a defamatory statement falls into one of four categories. Defamation *per se* involves a communication imputing: "(1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Baker v. Tremco, Inc.*, 917 N.E.2d 650, 657 (Ind. 2009). The communication must be made with malice, publication, and damage. *Id*. The plaintiff is entitled to presume damages as a natural and probable consequence of defamation *per se*. *Kelley v. Tanoos*, 865 N.E.2d 593, 597 (Ind. 2007). This is so because the words imputing one of those conditions are so naturally and obviously harmful that one need not prove their injurious character. *Cortez v. Jo-Ann Stores, Inc.*, 827 N.E.2d 1223, 1230 (Ind. Ct. App.2005). The defamatory nature of the communication must appear without reference to extrinsic facts or circumstances. *Id*. A person alleging defamation *per quod* must demonstrate the same elements without reference to extrinsic facts or circumstances but must additionally demonstrate special damages. *Id*.

[45] "[A] plaintiff who sues for defamation must set out the alleged defamatory statement[s] in the complaint." *Ali*, 53 N.E.3d at 428. "'When specific statements that are alleged to be defamatory have not been sufficiently identified in a plaintiff's complaint, an award of summary judgment for the defendant is proper.'" *Id.* (quoting *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 956 (Ind. Ct. App. 2014), *trans. denied*). In her complaint, Robinson alleged that: (1) School Appellees caused the Attorney General to file the AG Action; (2) the local paper, Northwest Indiana Times, reported that the School suspected Robinson of theft and had reported that theft to police; and

(3) sometime during a staff meeting, held during the 2009-2010 school year, West told the staff that she saw Robinson in Walmart, "spending the [S]chool's money." *Appellant's App. Vol. IV* at 89-90. The first two claims are defamation claims, while the claim about West is a claim of defamation per se.

## 1. Defamation

### a. The AG Action

[46] Robinson's claim about the AG Action fails because Robinson did not include in her first amended complaint the statement, if any, that School Appellees allegedly said to trigger the filing of the AG Action. *See Miller*, 11 N.E.3d at 956 ("When specific statements that are alleged to be defamatory have not been sufficiently identified in a plaintiff's complaint, an award of summary judgment for the defendant is proper."). Furthermore, even if a statement had been included, Indiana courts have recognized a common interest privilege that protects communication made in connection with membership qualifications, employment references, intracompany communications, and the extension of credit. *Kelley*, 865 N.E.2d at 597. This privilege "is intended to facilitate full and unrestricted communication on matters in which the parties have a common interest or duty." *Id*. at 598 (internal quotation marks and citation omitted). Under the facts of this case, any communication between School Appellees and the SBOA or Attorney General would have been protected by the common law interest privilege. The trial court did not err in granting summary judgment on this claim.

*b. The Newspaper Article*

[47]   Regarding the article, Robinson further complains that she was defamed because: (a) Johnson said Burns should not have to pay back missing funds (since ECA procedures were not in place until after Burns separated from employment), yet failed to say the same for Robinson; (b) the article excluded information that the School treasurer was responsible for overseeing the collection, retention, or deposit of public funds; and (c) that the article did not say that the School failed to comply with SBOA requirements pertaining to the ECA Account and that Johnson "did not believe Robinson stole money." *Id.*

[48]   Robinson's claims that she was defamed by information printed in the local newspaper fail. Robinson takes issue with the article's statements that (1) "[m]ore than $13,000 in cash payments for student lunches and extracurricular activities at [the School] never made it to the bank, *state auditors determined.*"; (2) the School filed a police report, but no further action has been taken, *according to the audit*; (3) *auditors* said they found [Robinson] . . . failed between August 2007 and March 2009 to deposit $11,841.12; and (4) School officials asked the SBOA to run an audit after the School suspected in March that someone was stealing money. *Appellant's App. Vol. VI* at 165 (emphasis added).

[49]   Regarding claims (1), (2), and (3), the newspaper reported that the auditor was the source of its information. It was the auditor who said that money never made it to the bank and that Robinson failed to deposit more than $11,000 over a two-year period. *Appellant's App. Vol. VI* at 165. Likewise, it was the auditor's audit that provided information that a police report had been filed and no

further action had been taken. Robinson cannot hold School Appellees responsible for the independent statements of the auditor; accordingly, those claims must fail.

[50] Claim (4), that Robinson was defamed when School Appellees asked the SBOA to run an audit because they suspected someone was stealing money, also fails. The statement to which Robinson refers makes no claim that Robinson was stealing the money or even that money was definitely being taken. Finally, and laying aside the question of whether the statements could even be considered defamatory, Robinson has designated no evidence that School Appellees made any false statements. *See Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 457 (Ind. 1999) ("In order to impose liability for defamation, the United States Constitution requires a false statement of fact."), *cert. denied*, 528 U.S. 1005 (1999). Robinson's defamation claim fails as a matter of law. The trial court did not err in granting summary judgment in favor of School Appellees on these four claims.

[51] Robinson also takes issue with omissions from the article, specifically, that Johnson did not say: (a) the School treasurer is responsible for public money, (b) she did not believe Robinson stole the money, and (3) the School did not comply with SBOA requirements.

[52] In *Town of West Terre Haute v. Roach*, 52 N.E.3d 4 (Ind. Ct. App. 2016), Roach was an at-will employee who was fired by the Town of West Terre Haute after the SBOA informed the Town Council President that it had discovered, during

a preliminary review, that public funds were missing. *Id.* at 6. Ultimately, it was found that Roach had not stolen any public funds. A newspaper article reported on a press conference, attended by the Town Council President, during which the allegations against Roach were discussed, but the President made no comment in exoneration of Roach. Roach filed a complaint but did not set forth any defamatory statement. Instead, she alleged that the President's omission of supporting statements resulted in defamation. Our court, granting summary judgment in favor of the Town found, "'It would be an odd use of the defamation doctrine to hold that silence constitutes actionable speech.'" *Id.* at 11 (quoting *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006)).

[53]  Like Roach, Robinson did not identify a defamatory statement made by Johnson. Instead, Robinson claims that in light of her termination from employment, she was defamed by Johnson's failure to include in the article statements that supported Robinson. Following our court's reasoning in *Roach*, we conclude that the trial court did not err in granting summary judgment in favor of School Appellees on this issue.[17]

---

[17] Robinson cites to *Glasscock v. Corliss* in support of her claim. 823 N.E.2d 748 (Ind. Ct. App. 2005), t*rans. denied*. However, the facts before us, like those in *Roach*, differ from *Glasscock*. There, the defamatory statements were that Corliss had been fired because of discrepancies in her expense reports and had bought gifts for her family and friends. The only fair inference was that Corliss had committed misconduct by purchasing gifts for her family with company funds, thereby constituting a defamatory communication. *Id.* at 753. Here, Johnson's "statements" about which Robinson objects were omissions, not commissions.

## 2. Defamation Per Se

Finally, Robinson's claim regarding West's statements also fails. Robinson contends that the trial court erred when it granted summary judgment in favor of School Appellees on her claim that she was defamed *per se* by a statement made by West during a staff meeting. In her complaint, Robinson described the defamation as follows: "The Plaintiff was again defamed sometime around the convening of the 2009-2010 school year, during a 21st century staff meeting, when [West] told the staff that she saw [Robinson] in Walmart 'spending the school's money.'" *Appellant's App. Vol. IV* at 90.

Robinson contends that there was a genuine issue of material fact created by the affidavit executed by Patricia Tatum, an affidavit that Robinson contends was not the subject of School Appellees' motion to strike. In that affidavit, Tatum said: "During my employment [with the School] . . . I personally heard Angela West make negative comments about Victoria Robinson, once at a staff meeting . . . ."[18] *Appellant's App. Vol. XI* at 81. Tatum added that the staff meeting occurred after Robinson was no longer employed at the school and that "[d]uring the staff meeting, Mrs. West stated, "'she saw Victoria Robinson at Walmart spending our money.'" *Id*.

---

[18] Tatum also stated that, while she and West were having lunch together, West make a negative statement about Robinson. *Appellant's App. Vol. XI* at 81. Because this is the first time that such an allegation has been made in this case, that issue is waived. *See Messmer v. KDK Fin. Servs., Inc.*, 83 N.E.3d 774, 781 (Ind. Ct. App. 2017).

[56] Regarding defamation *per se*, our court recently noted:

> Recent Indiana decisions clarify that defamation *per se* as to one's profession involves actual misconduct as opposed to a generalized opinion. In *Levee v. Beeching*, 729 N.E.2d 215 (Ind. Ct. App. 2000), a school principal sued a teacher's union and the union representation for defamation *per se*. The union representative had called the principal a "liar" and stated that she "favored some staff." *Id*. at 218. A panel of this Court concluded that the words were not "so obviously and naturally harmful that proof of their injurious character can be dispensed with." *Id*. at 220. The Court also observed that the statements were not defamatory on their own, but were only defamatory with reference to the union representative's pattern of personal attacks against the principal. *Id*.

*Sheets v. Birky*, 54 N.E.3d 1064, 1071 (Ind. Ct. App. 2016). Following the *Sheets* reasoning, we cannot say that West's statements were defamatory *per se*. Here, the defamatory nature of the communication does not appear "without resort to extrinsic facts or circumstances." *McQueen v. Fayette Cty. Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), *trans. denied*. If West made the alleged statement during a staff meeting, only teachers who knew of Robinson's circumstances would find "defamatory imputation." *Sheets*, 54 N.E.3d at 1070. Accordingly, we find no error in the trial court's grant of summary judgment in favor of School Appellees on this claim of defamation *per se*.

### F. Counts VIII and IX –Board's Breach of Duty and Negligence

[57] Robinson's claims that she was harmed by the Board's breach of fiduciary duty and School Appellees' negligent actions are related issues. To recover under a

theory of negligence, a plaintiff must show "'(1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty.'" *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016) (quoting *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003)). "Absent a duty there can be no negligence or liability based upon the breach." *Id.* (citing *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004)).

[58] To prevail on a motion for summary judgment, defendants must show that the undisputed material facts negate at least one of the elements essential to plaintiff's claim or that the claim is barred by an affirmative defense. *Severance v. New Castle Cmty. Sch. Corp.*, 75 N.E.3d 541, 546 (Ind. Ct. App.), *trans. denied*. "Summary judgment is rarely appropriate in negligence cases because they are particularly fact-sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence." *Kramer v. Catholic Charities of Diocese of Ft. Wayne-S. Bend, Inc.,* 32 N.E.3d 227, 231 (Ind. 2015). However, the element of duty is generally a question of law to be determined by the court. *Smith v. Walsh Constr. Co. II, LLC*, 95 N.E.3d 78, 84 (Ind. Ct. App. 2018) *trans. denied.* Accordingly, our review is de novo.

### 1. Breach of Board's Duty

[59] Robinson contends that the Board had a statutory duty to comply with Indiana law and that the Board breached its duty of loyalty to her by negligently managing the School. *Appellant's Br*. at 30, 31. Robinson's theory appears to be

that, but for the Board's failure to implement and monitor internal controls and comply with the SBOA's uniform guidelines, she would not have been subject to a civil collection action by the Indiana Attorney General. Robinson claims that her damages arose, in part, from "being unlawfully held accountable for the difference between receipts collected and funds deposited into the ECA [Account]." *Id*. at 32.

[60] Robinson fails to point to any specific evidence or caselaw to support her contention that the Board owed *her* either a statutory duty to comply with the law or a duty of loyalty. Moreover, even if the Board did owe Robinson a duty, its failure to comply with that duty was not the proximate cause of the AG Action. There was uncontroverted evidence before the trial court that the State prosecutor decides whether there is a criminal action to pursue, and the Attorney General decides whether to pursue a civil action for any misappropriation of assets. *Tr. Vol. II* at 15-16. Regardless of whether the Board acted or did not act, as a matter of law, the Board could not have been responsible for the initiation of the AG Action to recover public funds from Robinson. *See Collins v. J.A. House, Inc.*, 705 N.E.2d 568, 576 (Ind. Ct. App. 1999) (affirming grant of summary judgment because, as a matter of law, defendant's alleged negligent act was not a proximate cause of defendant's injuries), *trans. denied*.

## 2. Negligence

[61] Robinson also asserts that the trial court erred in granting summary judgment on her claim of negligence. Robinson contends that she incurred damages from

School Appellees' negligence because School Appellees: (1) failed to have an independent investigation regarding the financial irregularities; (2) failed to adequately train Robinson regarding her bookkeeping duties; (3) persisted in causing the special investigation by the SBOA, when they should have known that Robinson did not steal or misappropriate public funds; (4) persisted in causing the AG Action to continue, when they knew that they lacked policies, procedures, and financial controls, which caused the financial irregularities; (5) failed to have proper policies, procedures, and financial controls in place and failed to comply with SBOA rules, which resulted in the foreseeable loss of money. *Appellant's App. Vol. IV* at 108

[62] Here, Robinson was hired as an officer manager, and her relationship with School Appellees was created by the Employment Contract. Although Robinson designated volumes of evidence, none of that evidence created a genuine issue of material fact regarding whether School Appellees would, or even could, by statute or under the terms of the contract, initiate an independent financial investigation to clear Robinson's name, stop an SBOA audit, or dissuade the Attorney General from filing a collection action. School Appellees had no duty to Robinson to take any of these actions on her behalf. Furthermore, even if School Appellees had a duty to ensure that (1) Robinson was properly trained and (2) proper policies, procedures, and financial controls were in place, any injury that Robinson sustained was not the proximate cause of that breach. Robinson did not contend that she knew where the missing money was but had been unable to deposit it because she had been improperly

trained or had used the improper form or procedure; the State filed suit against Robinson because public money could not be accounted for. From the designated evidence, we find no genuine issue of material fact. The trial court properly granted summary judgment in favor of School Appellees on the negligence claim.

### H. Count X -- Intentional Infliction of Emotional Distress

[63] Robinson finally contends that she was subjected to intentional infliction of emotional distress ("IIED") when outrageous acts by School Appellees invaded her legal right to be free from false accusations regarding the missing money and free from the ensuing AG Action. "The tort of [IIED] occurs when the defendant (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *McCollough v. Noblesville Sch.*, 63 N.E.3d 334, 341-42 (Ind. Ct. App. 2016) (internal quotation marks omitted), *trans. denied.* "The requirements to prove this tort are rigorous, and at its foundation is 'the intent to harm the plaintiff emotionally.'" *Id.* at 342 (quoting *Bah v. Mac's Convenience Stores, LLC*, 37 N.E.3d 539, 550 (Ind. Ct. App. 2015)), *trans. denied.* "As often quoted from Comment (d) of the Restatement (Second) of Torts Section 46 (1965),"

> The cases thus far decided have found liability only where the
> defendant's conduct has been extreme and outrageous. It has not
> been enough that the defendant has acted with an intent which is
> tortious or even criminal, or that he has intended to inflict
> emotional distress, or even that his conduct has been
> characterized by "malice," or a degree of aggravation which
> would entitle the plaintiff to punitive damages for another tort.

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*McCollough*, 63 N.E.3d at 342. "The question of what amounts to extreme and outrageous conduct depends in part on prevailing cultural norms and values, and [i]n the appropriate case, the question can be decided as a matter of law." *Id.* This is one of those cases.

[64] In her first amended complaint, Robinson alleged: "But for the deception, false statements and unfounded representation of material fact to the SBOA and police there would have been no litigation to recover the public funds and therefore no defaming reports in the local newspaper." *Appellant's App. Vol. IV* at 109. The crux of Robinson's argument is that her emotional distress and injuries arose from the AG Action, which, she claims, was prompted by "false reports and statements that employees made to the SBOA." *Appellant's Br.* at 51. In her motion in opposition to School Appellees' motion for summary judgment, Robinson argues that it was West's intention that Robinson be prosecuted; therefore, when West's report to the police did not result in prosecution, West told the SBOA and field examiners that Robinson had stolen the School's funds. *Appellant's App. Vol. X* at 190. Robinson asserts that there is a genuine issue of material fact, arguing that it is necessary to determine West's

state of mind to prove that West either intentionally or recklessly made statements about Robinson that led to her distress.

[65] Here, it is unnecessary to investigate what West's state of mind was when she made the statements about Robinson's suspected theft[19] because, contrary to Robinson's assertion, those statements are not material to her IIED claim. Robinson argues that West's statements triggered the AG Action, which resulted in her emotional distress. However, in a deposition, a member of the audit team, Small, testified[20] that the account examiners and SBOA play no role in determining what action, if any, is pursued after an audit is certified and forwarded to the Attorney General and prosecutor's office. *Appellant's App. Vol. XI* at 125, 126. It is the prosecutor who decides whether there is a criminal action to pursue, and the Attorney General who decides whether to pursue a civil action for any misappropriation of assets. *Tr.* at 15-16; *Appellant's App. Vol. XI* at 125-26. This testimony was not disputed.[21] Because discovery produced no facts to support Robinson's claim that School Appellees had subjected her to IIED, School Appellees presented the trial court with a prima facia case that summary judgment should be granted in their favor, and Robinson presented

---

[19] Robinson also makes arguments regarding her damages. An argument about damages is also unnecessary if there is no causation between West's statements and the Attorney General's determination to bring the AG Action.

[20] Mary Jo Small's testimony was transcribed in a deposition, which was attached as Exhibit D to School Appellees' reply in support of their motion for summary judgment. *Appellant's App*. Vol. XI at 125, 126.

[21] Robinson suggested that she was targeted because the School did not properly follow the SBOA protocol. *Tr.* at 30. We disagree. Here, Robinson was not charged for improper use of forms and procedures; instead she was charged for missing money that could not be accounted for under any form of accounting.

no evidence to produce a genuine issue of material fact on that claim. Furthermore, even if West intended to trigger the AG Action, as a matter of law, we cannot say that her statements were so outrageous in character or extreme in degree that her actions can be regarded as atrocious or utterly intolerable in a civilized community.[22]  *See Jaffri v. JPMorgan Chase Bank, N.A.,* 26 N.E.3d 635, 640 (Ind. Ct. App. 2015) (holding that even assuming defendant intentionally mishandled mortgage-related documents, such conduct is not "the type of beyond-the-pale, 'outrageous' conduct that may be covered by an IIED claim"); *cf. Mitchell v. Stevenson,* 677 N.E.2d 551 (Ind. Ct. App. 1997) (holding that evidence that decedent's second wife secretly decided to disinter decedent's remains, rather than maintain a grave with a headstone pursuant to an agreement with family members, sufficiently established that wife's actions were deliberate and extreme and outrageous for purposes of establishing an IIED claim), *trans. denied.*  The trial court did not err in granting summary judgment in favor of School Appellees on Robinson's IIED claim

Affirmed.

Vaidik, C.J., and Riley, J., concur.

---

[22] Robinson also makes arguments regarding her damages.  Because we conclude as a matter of law that Robinson cannot establish that West triggered the AG Action or that School Appellees engaged in extreme and outrageous conduct, we need not address Robinson's claims regarding the other elements of her IIED claim.